UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES MCGINN, )<br><br>Plaintiff, )<br><br>v. )<br><br>EXECUTIVE OFFICE OF ENERGY AND )<br>ENVIRONMENTAL AFFAIRS, )<br>MASSACHUSETTS ENVIRONMENTAL )<br>POLICE, and SECRETARY MATTHEW A. )<br>BEATON IN HIS OFFICIAL AND )<br>INDIVIDUAL CAPACITY, )<br><br>Defendants. ) | Civil Action No. 19-CV-11551-IT |

**MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS**

David S. Mackey (BBO# 542277)
*Special Assistant Attorney General*
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
Tel: (617) 621-6531
Fax: (617) 621-6631
dmackey@andersonkreiger.com

## TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ..................................................................................................... 1

II.  FACTUAL ALLEGATIONS .................................................................................... 4

III. THE COURT SHOULD DISMISS ALL COUNTS AGAINST THE STATE
DEFENDANTS FOR FAILURE TO STATE A CLAIM ........................................... 6

   A.   Count I: McGinn Has Failed to Allege that He Engaged in Any Constitutionally
   Protected Activity. ..................................................................................................... 7

      1.   McGinn's Speech Constituted Internal Complaints About Management Practices
      Pursuant to his Official Responsibilities. ............................................................. 8

      2.   An Employee's Internal Complaints to a Supervisor Must Contribute to Public
      Discourse to "Address a Matter of Public Concern." ........................................... 10

   B.   Count II: McGinn has Failed to Allege a Claim Under the Whistleblower Act. .............. 11

      1.   McGinn's Allegations Largely Concern Disagreements over Management Practices,
      Not Illegal Activities. ........................................................................................ 12

      2.   It is Implausible that McGinn's Termination was the Result of Whistleblowing About
      Activity that May Not Even Be Illegal And Allegedly Occurred Nearly Three Years Prior to
      His Termination. ................................................................................................. 13

      3.   McGinn Failed to Deliver the Required "Written Notice" under the Act. ................. 15

   C.   Count III: McGinn Cannot State a Claim Under the Massachusetts Civil Rights Act. ..... 16

      1.   By Bringing a Whistleblower Claim, McGinn has Waived his Right to Assert An
      MCRA Claim. .................................................................................................... 16

      2.   The Commonwealth, its Agencies, and Individuals Acting in Their Official Capacity
      Are Not "Persons" Under the MCRA. ................................................................... 17

   D.   Count IV: McGinn Cannot State a Common Law Claim that He was Terminated in
   Violation of Public Policy. ....................................................................................... 18

      1.   By Bringing a Whistleblower Claim, McGinn has Waived his Right to Assert a
      Common Law Claim for Termination in Violation of Public Policy. ......................... 18

      2.   The Commonwealth, its Agencies, and Individuals Acting in Their Official Capacity
      Are Immune from Intentional Torts. ...................................................................... 18

   E.   The MEP Is Not A Proper Defendant In This Suit. ..................................................... 19

IV.  CONCLUSION ....................................................................................................... 20

## I.      INTRODUCTION

The Executive Office of Energy and Environmental Affairs ("EEA"), the Massachusetts Environmental Police ("MEP"), and former EEA Secretary Matthew Beaton sued in his official capacity[1] ("Secretary") (collectively, the "State Defendants"), submit this memorandum in support of their motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The plaintiff, James McGinn ("McGinn"), alleges he was retaliated against for raising a number of complaints and concerns about management practices at MEP, and that on October 19, 2018 he was wrongfully terminated from his position as Colonel of the MEP.  Even accepting all of McGinn's allegations as true, his Complaint fails to state a claim upon which relief can be granted.

Count I, a civil rights claim under 42 U.S.C. § 1983, alleges that McGinn's termination constituted improper interference with his constitutional right to free speech, as well as his rights to continued employment, to participate in concerted activity, to due process, and to petition and seek redress from governmental abuse.  Complaint ¶¶ 105-108.  This claim fails on all counts. The First Amendment does not protect as free speech internal disagreements voiced by a public employee about management practices in the workplace.  *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes").  As one court reasoned:

> [A] public employee does not gain any special advantage in disputes of a private nature, such as garden variety employment beefs, merely because the employer happens to be a state actor and therefore subject to suit under [§ 1983]. The First and Fourteenth Amendments do not "constitutionalize" the employer/employee relationship simply because the employer happens to be a governmental agency.

---

[1] Former Secretary Matthew Beaton served as the Secretary of the EEA from January 8, 2015 to May 3, 2019.  The former Secretary is being represented in his individual capacity by separate counsel.

*Bennett v. City of Holyoke*, 230 F. Supp. 2d 207, 223 (D. Mass. 2002).  Further, McGinn is an employee at will.  G.L. c. 21A, §10A ("The secretary [of the EEA] shall appoint the director [of law enforcement] and may remove him.").  He has no constitutional right to continued employment, nor any other constitutional right with respect to his activities as an at-will employee.  *Ventetuolo v. Burke*, 596 F.2d 476, 481 (1st Cir. 1979) ("A constitutionally protected property interest has not been recognized where the employee serves at the will and pleasure of the public employer.").[2]

Count II, a claim for violations of the Whistleblower Act, G.L. c. 149, § 185, alleges that McGinn was wrongfully terminated in retaliation for reporting, objecting to, and refusing to participate in activities, policies or practices that he "reasonably believed" were in violation of a law.  Complaint ¶¶ 109-113.  This claim should be dismissed because the vast majority of McGinn's allegations do not raise even a hint of illegal activity.  *See* G.L. c. 149, § 185(b) (protecting only an employees' actions with respect to activities, policies or practices of an employer "that the employee reasonably believes is in violation of a law," rule or regulation); *Tryon v. Massachusetts Port Auth.*, SUCV2013-02518-G, at *5 (Mass. Super. Jun. 16, 2014) (attached as Exhibit A) (granting motion to dismiss under Mass. R. Civ. P. 12(b)(6) where plaintiff failed to allege that his reporting actions about inefficient scheduling and overtime practices amounted to an internal complaint about illegal activity).  Even had McGinn adequately alleged illegal activity subject to the Whistleblower Act (which he has not), any such activity occurred

---

[2] Because McGinn lacks the right to continued employment, G.L. c. 21A, §10A, he also lacks the right to due process in the investigation which led to his termination. *See Regents of State Colls. v. Roth*, 408 U.S. 564, 569-79 (1972) (without a protected property interest, due process requirements are not implicated).  McGinn's other alleged constitutional violations – of his rights to participate in concerted activity, and to petition and seek redress from governmental abuse – also fail because his Complaint does not allege, in any way, how those rights were violated.

over two and a half years prior to his termination.   It is implausible that his October 2018 termination was a result of that activity.  *Lewis v. City of Boston*, 321 F.3d 207, 219 (1st Cir. 2011) (plaintiff's claim that he was terminated because of his public advocacy is undermined by a temporal gap of over a year and a half).

McGinn restates his wrongful termination allegations under the Massachusetts Civil Rights Act ("MCRA"), Count III, Complaint ¶¶ 114-115, and under the common law as wrongful termination in violation of public policy. Count IV, *id.* ¶¶ 116-120.  Both claims are barred by the waiver provision of the Whistleblower Act, which provides that "the institution of a [whistleblower action] shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law."  G.L. c. 149, §185(f); *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 156-57 (D. Mass. 2009) (by choosing to proceed with a whistleblower claim, plaintiff waived MCRA claim against his employer).  Count III is also barred because the State Defendants are not considered "persons" under the MCRA.  *Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 30 (D. Mass. 2011) (MCRA claims against the Commonwealth, its agencies, and officers in their official capacities fail because "the Commonwealth and its agencies are not persons within the meaning of the MCRA").  Finally, Count IV is barred because the State Defendants are immune from intentional torts, which courts have construed to include wrongful termination claims based on public policy. *See* G.L. c. 258, § 10(c) (prohibiting claims against the Commonwealth, its municipalities, counties and districts and the officers and employees thereof for "any claim arising out of an intentional tort . . . ."); *Ryan v. Holie Donut, Inc.*, 82 Mass. App. Ct. 633, 636 (2012) (construing claims for wrongful termination of an at-will employee as a tort).

## II.    FACTUAL ALLEGATIONS

The EEA is a cabinet secretariat within the executive department of the Commonwealth, tasked with safeguarding the environment and preserving, protecting, and enhancing the natural resources of the Commonwealth.  G.L. c. 21A, § 2.  To meet its mandate, the EEA manages and oversees six agencies and other divisions within the EEA, including the MEP, which is formally called the "Office of Law Enforcement."  G.L. c. 21A, § 10A.  McGinn was the Colonel of the MEP from January 2015 until his discharge in October 2018.  Complaint ¶¶ 5, 9, 74.  During his tenure with the MEP, McGinn served at the pleasure of the Secretary, who serves as McGinn's appointing authority.  *Id.* ¶ 10;  G.L. c. 21A, § 10A.

McGinn's Complaint outlines three years of personal grievances with the Secretary and the MEP.  The factual allegations are scattered through a lengthy 120-paragraph Complaint.  Nonetheless, the Complaint appears to contain nine discrete allegations, which can be sorted into two categories: seven of McGinn's nine allegations concern internal complaints about management decisions by McGinn's superiors at EEA; only two of the nine allegations even begin to approach potentially illegal conduct within the purview of the Whistleblower Act.

In the first category, McGinn lists seven concerns with the internal policies and procedures of the MEP and EEA.  First, McGinn alleges that he objected to MEP's failure to hold its officers accountable for either allegedly showing up late for work or for absenteeism, and asserts that he implemented policies to improve on-time attendance for work.  *Id.* ¶¶ 15-23, 58-65.  Second, McGinn voiced concern over the MEP's management of an officer who was allegedly out on injured on duty leave without adequate follow-up from the human resources department, and alleges that he personally took steps to investigate the officer.  *Id.* ¶¶ 49-55.  Third, McGinn asserts that he investigated MEP officers who allegedly used their state-issued vehicles to attend a local Christmas party at a bar, and that he disagreed with the Secretary's

decision to impose less severe sanctions on those officers than McGinn recommended.  *Id.* ¶¶ 24-28.  Fourth, McGinn expressed disagreement with the use of MEP officers to teach classes at a private summer camp without reimbursement by the summer camp, and asserted that the practice was "unethical."  *Id.* ¶¶ 40-48.  Fifth, McGinn expressed dissatisfaction with the lack of a sophisticated security system at an MEP facility, and ordered the installation of surveillance cameras at that office.  *Id.* ¶¶ 68-70.  Sixth, he notes the EEA's sensitivity to its public image during the months preceding a gubernatorial election.  *Id.* ¶¶ 56-57, 67.  Seventh, McGinn alleges that the Secretary instructed MEP employees not to transmit personal or confidential information over email in order to avoid potential disclosure of such information as public records.  *Id.* ¶ 35.[3]

McGinn alleges that when he expressed his dissatisfaction over such practices to the Secretary, he was turned away – at times "overridden," *id.* ¶ 27, instructed to cooperate, *id.* ¶ 48, or told to "keep a lid on things" *id.* ¶ 66 – and eventually terminated "in an effort to thwart [his] efforts to reform the MEP and hold them accountable."  *Id.* ¶ 80.

In the second category are two allegations concerning requests allegedly made by the Secretary to McGinn that McGinn allegedly construed as involving illegal activity.  These are the only allegations that even arguably implicate the Whistleblower Act.  First, the Secretary allegedly asked McGinn to use "a law enforcement database" to "look into" a new neighbor that had moved into the Secretary's neighborhood in 2015.  *Id.* ¶ 12-14.  McGinn does not allege which particular database the Secretary asked him to use, but apparently interpreted the request to apply to a Board of Probation or Criminal Justice Information Services ("CJIS") database.  *Id.*

---

[3] While the Complaint alleges that McGinn raised the first five of these concerns with his superiors during his time at MEP, he does not even allege that he raised any concerns with anyone about the sixth and seventh.

¶ 13.  Second, the Secretary allegedly asked McGinn to "assist" the Secretary with a speeding

ticket, and McGinn provided the Secretary with guidance regarding how to resolve the ticket.[4]

*Id.* ¶¶ 29-34.

As McGinn notes in the Complaint, he was in fact terminated on October 19, 2018, *after*

an investigation by EEA which found that he had: 1) fixed two tickets issued to minors on a civil

motor vehicle infraction in 2015; and 2) used unauthorized means to investigate work patterns of

his own employees.  *Id.* ¶¶ 22, 70, 74.[5]  Following his termination, McGinn sent notice of his

whistleblower claim to the State Defendants in January and April 2019.  *Id.* ¶¶ 97, 101.

## III.   THE COURT SHOULD DISMISS ALL COUNTS AGAINST THE STATE DEFENDANTS FOR FAILURE TO STATE A CLAIM

Under Fed. R. Civ. P. 12(b)(6), the court should dismiss a claim when the complaint does

not allege sufficient factual matter to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009); *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim lacks "facial plausibility" when the plaintiff does not plead factual

content that allows the court to draw a reasonable inference that the defendant is liable for the

misconduct alleged.  *Id.*  Specifically, with respect to the retaliation and whistleblower claims of

the sort raised by McGinn, courts have not hesitated to dismiss where the plaintiff has not stated

a plausible claim.  *E.g.*, *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 173 (D. Mass. 2013)

(granting motion to dismiss retaliation claim under 12(b)(6) where plaintiff's letter about

---

[4] The Complaint also alleges two other incidents of alleged "ticket fixing" that was requested of McGinn.  Complaint ¶¶ 36-39.  These incidents are immaterial to McGinn's claims because they do not concern the defendants, and McGinn does not allege that these incidents had anything to do with his termination or that he even raised these issues with his superiors at EEA.

[5] McGinn acknowledges in his Complaint that he unilaterally decided to use public money to install a camera system at an MEP complex "to ensure work attendance," and to hire a private investigator to investigate one of his employees' attendance at work.  *Id.* ¶¶ 21-22, 70.

management decisions was not First Amendment protected speech); *Tryon*, SUCV2013-02518-G, at *5 (granting motion to dismiss whistleblower claim under 12(b)(6) where plaintiff failed to suggest that his reporting actions concerned illegal activity).  McGinn's claims are simply not plausible, and fail as a matter of law.

> **A.      Count I: McGinn Has Failed to Allege that He Engaged in Any Constitutionally Protected Activity.**

Insofar as it alleges a violation of McGinn's right to free speech, McGinn's § 1983 claim must fail because McGinn has not alleged that he engaged in any speech protected by the First Amendment.  McGinn's "speech" is best characterized as complaints and disagreements between a managerial employee, McGinn, and his supervisor, the Secretary, about management practices at the organization they oversee, the MEP.  Complaints about management practices between employees and their employers do not qualify as protected speech.  *See Garcetti*, 547 U.S. at 421 (memorandum submitted to advise supervisor about how to proceed with prosecution is not protected speech); *Connick v. Myers*, 461 U.S. 138, 148 (1983) (questionnaire concerning internal office affairs is not protected speech); *Perkins*, 969 F. Supp. 2d at 173 (granting motion to dismiss under 12(b)(6) because letter to the Fire Union President opposing the extension of Chief's service beyond mandatory retirement age is not protected speech); *O'Brien v. Robbins*, 679 F. Supp. 2d 212, 217 (D. Mass. 2010) ("as a matter of law," complaints about a coworker's girlfriend visiting during working hours are not protected speech).

As a threshold matter, for McGinn to claim that his First Amendment right to free speech as a public employee was infringed upon, McGinn must first allege that his statements were made "as a citizen addressing matters of public concern."  *Garcetti*, 547 U.S. at 417.  As the First Circuit has held, this threshold question can be broken down into two parts: "(a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern."  *Curran*

*v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007).   "If either of these preliminary inquiries is answered

in the negative, the employee has no First Amendment cause of action based on his or her

employer's reaction to the speech."   *O'Brien*, 679 F. Supp. 2d at 216 (quoting *Garcetti*, 547 U.S.

at 418).   Here, McGinn was not speaking as a citizen, his alleged statements were not on matters

of public concern, and therefore his claim must fail.

>        1.        McGinn's Speech Constituted Internal Complaints About Management
>                  Practices Pursuant to his Official Responsibilities.

The standard for determining whether an individual is speaking as a private citizen

depends on whether the speech was made pursuant to and in furtherance of the individual's

official responsibilities.   *See Garcetti*, 547 U.S. at 421-22;   *Decotiis v. Whittemore*, 635 F.3d 22,

32 (1st. Cir. 2011) (identifying non-exclusive list of seven factors which can be considered in

determining if the speech was made pursuant to official responsibilities); *Perkins*, 969 F. Supp.

2d at 172-173.   When individuals express concerns that are aimed at improving or changing

management practices, courts have consistently held that they are speaking pursuant to their

official responsibilities and not as private citizens.   *See Garcetti*, 547 U.S. at 421 (plaintiff's

memorandum recommending a course of action to his supervisor was fulfilling a professional

responsibility, not speaking as a private citizen); *Perkins*, 969 F. Supp. 2d at 172-174 (granting

motion to dismiss under 12(b)(6) where plaintiff's letter objecting to making an exception to the

mandatory retirement age was in furtherance of his role as a member of the Fire Department and

consistent with his managerial responsibilities, rather than as a private citizen).

In McGinn's case, his complaints to the Secretary about a perceived lack of

accountability in the MEP were in furtherance of his role as the Colonel of the MEP, and

concerned issues relating to the management and policies of the MEP.   As Colonel, management

of the MEP was a core component of McGinn's job responsibilities.   Complaint ¶ 71 ("As the

Departmental head of the Environmental Police, Colonel McGinn had the managerial authority, indeed the responsibility, to investigate these employment issues and to take the appropriate steps to ensure that public funds were being properly spent. . . .").  His complaints were purportedly based on his concerns about the most efficient and effective ways to run the department.  Thus, McGinn voiced his complaints not as a private citizen, but pursuant to his official duties because they were "part and parcel of his concerns about his ability to properly execute his duties."  *Perkins*, 969 F. Supp. 2d at 173 (citations omitted).

It is also significant that McGinn voiced his complaints to the Secretary in a form or channel of discourse not available to non-employee citizens.  *See Perkins*, 969 F. Supp. 2d at 173-174 (granting motion to dismiss under 12(b)(6) where the plaintiff made an internal communication pursuant to an existing dispute-resolution policy established by his employer, for which the plaintiff's complaint lacked a relevant analogue to citizen speech and thus retained no possibility of constitutional protection) (citations omitted); *cf. Curran*, 509 F.3d. at 45-46 (statements made to superiors concerning official department policy were not protected, while statements posted by employee on union website open to the public were protected).  The only forms or channels of communication that McGinn alleges he used in voicing his complaints were internal: to the Secretary himself, Complaint ¶¶ 15, 17, 40, to "others within the MEP," *id.* ¶ 17, and to EEA's Legal Department. *Id.* ¶ 49, 60.  McGinn never alleges that he spoke using a form or channel of communication available to the general public.  Thus, McGinn's complaints fail to garner constitutional protection.  *See Perkins*, 969 F. Supp. 2d at 173-174; *cf. Curran*, 509 F.3d at 45-56.

2.     An Employee's Internal Complaints to a Supervisor Must Contribute to
Public Discourse to "Address a Matter of Public Concern."

Even if McGinn's complaints were made as a private citizen, McGinn's complaints were

not a matter of public concern.  In determining whether a statement was a matter of public

concern, courts will consider whether the individual intended to contribute to meaningful public

discourse.  *See Jordan v. Carter*, 428 F.3d 67, 73 (1st Cir. 2005) (if performance critiques

concerned only matters of workplace practices and discussion of safety issues reflecting

employee workplace concern (rather than the public interest), plaintiff's speech would not

address a matter of public concern); *Corbin v. Gillen*, 839 F.Supp. 2d 376, 381-82 (D. Mass.

2011) ("as a matter of law," plaintiff's insulting and disparaging remarks about his employer did

not address a matter of public concern because it did not have relevance to meaningful public

discourse), citing *Meaney v Dever,* 326 F.3d 283, 289 (1st Cir. 2003).

McGinn's internal complaints to the Secretary about a perceived lack of accountability in

the MEP were an attempt to vent about the status quo, rather than an attempt to spark a public

discourse about accountability and efficiency in state agencies.  McGinn's choice only to express

his complaints internally to the Secretary, rather than bring his concerns to the public, evinces

that he did not intend to contribute to public discourse.  *See O'Brien*, 679 F. Supp. 2d at 216

("The court must also examine the extent to which plaintiff[] intended [his] speech to contribute

to any public discourse, or if it simply reflected personal or internal [Department] concerns.")

(quotations omitted).  Thus, McGinn's decision to keep his complaints in house does little to

"provide members of society with information necessary to make informed decisions about

government operations, to disclose public misconduct, or to inspire public debate on a matter of

significant public interest."  *Meaney*, 326 F.3d at 288-89 ("as a matter of law," plaintiff's

blowing of his car horn in support of union picketing did not relate to a matter of public concern because it failed to contribute to meaningful public discourse).[6]

**B.**     **Count II: McGinn has Failed to Allege a Claim Under the Whistleblower Act.**

McGinn's claim under the Whistleblower Act against the EEA and MEP, but not the Secretary in his official or individual capacity, fails as a matter of law because, as set out above, with respect to seven of his nine allegations, McGinn does not allege any illegal activity, and in the remaining two of his allegations, it is implausible that any whistleblowing about the alleged illegal activity led to his termination.  The Whistleblower Act prohibits a public employer from taking any retaliatory action against an employee who engages in protected whistleblowing activity.  G.L. c. 149, § 185(b).  Under the Whistleblower Act, one such protected activity includes *objecting to or refusing to participate in* "any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law."  *Id.* at § 185(b)(3).  Another protected activity is *disclosing* to a supervisor or a public body any "activity, policy, or practice . . . that the employee reasonably believes is in violation of the law, or a rule or regulation promulgated pursuant to law."  *Id.* at § 185(b)(1).  To qualify for protection under the disclosure provisions of § 185(b)(1), the employee must first "br[ing] the activity, policy or practice . . . to the attention of a supervisor of the employee by written notice and . . . afford[] the employer a reasonable opportunity to correct the activity, policy or practice."  *Id.* at § 185(c)(1).

---

[6] Count I against the Secretary in his official capacity should also be dismissed because it is redundant to sue an individual in their official capacity where the government is also sued.  *See Kentucky v. Graham*, 476 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself.").

1.　　McGinn's Allegations Largely Concern Disagreements over Management
        Practices, Not Illegal Activities.

A threshold qualification to protection under both sections of the Whistleblower Act is that the employee must "reasonably believe[]" that the challenged policy "is in violation of a law," rule or regulation.  G.L. c. 149, § 185(b)(1) & (3).  With respect to most of his allegations, McGinn has failed to allege that he reasonably believed that the practices and policies that he disclosed or objected to were in violation of a law, rule or regulation.  For example, McGinn alleges that one such instance was "unethical," but not illegal.  Complaint ¶ 46. In fact, McGinn only alleges two instances of what he perceived to be "illegal" conduct.  *Id.*  ¶ 14.  McGinn does not describe *any* of his other allegations as evidencing illegal activity on behalf of the State Defendants.

McGinn's first allegation concerning a management decision with which he disagreed centered on MEP officers showing up late for their scheduled shifts, and MEP's alleged reluctance to curb that practice.  Complaint ¶¶ 15-16.  A lack of response from management to employee tardiness does not constitute illegal activity.  McGinn's second such allegation concerns an MEP officer who had allegedly been out on injured on duty leave for nearly two years without follow up from the human resources department.  *Id.* ¶¶ 49-50.  Even accepting this allegation as true, the failure of a human resources department to investigate an injured police officer's on duty leave is not illegal.  Similarly, McGinn's remaining five of the seven allegations, concerning the Secretary's decision to impose sanctions on MEP officers that differ from the sanctions that McGinn preferred, *id.* ¶¶ 24-28, the lack of a security system at an MEP complex, *id.* ¶¶ 68-70, MEP's alleged sensitivity to its public image during a gubernatorial election, *id.* ¶¶ 56-57, 67, and the Secretary's instruction to MEP employees not to include personal or confidential information in emails that may later become part of the public record, *id.*

¶ 45, do not implicate a violation of any law, rule or regulation, and McGinn does not allege

otherwise.  Finally, although McGinn labels MEP's decision to not require a summer camp to

reimburse the department for its officers' time spent teaching its students as "unethical, if not

illegal," McGinn never cites to the law, rule or regulation that this practice allegedly violated,

and in fact, concedes that this activity was supported by federal funding intended to support

exactly this type of boater safety education.  *Id.* ¶¶ 40-48.

All of these seven allegations reveal merely disagreements over management practices.

Such disagreements fall short of the statutory requirement set forth in the Whistleblower Act.

*See Direnzo v. Rockland Bd. of Selectmen*, 2004 WL 3088657, at *2 (D. Mass Oct. 25, 2004)

("[P]laintiff nowhere alleges that she believed that the defendants' actions were illegal . . . [T]hat

is an essential demand of her claim under the statute . . . ."); *Service v. Newburyport Hous. Auth.*,

63 Mass. App. Ct. 278, 281-284 (2005) (alleged violation of personnel policy manual does not

constitute a violation of a law, rule or regulation within the meaning of the Whistleblower Act);

*Tryon*, SUCV2013-02518-G, at *5 (granting motion to dismiss under Mass. R. Civ. P. 12(b)(6)

where "the plain language of the complaint and the authorities [the plaintiff] cites do not give

rise to a plausible suggestion that [plaintiff]'s reporting actions amounted to an internal

complaint about criminal activity.").  Thus, particularly with respect to these seven allegations,

McGinn's Complaint fails to state a claim under the Whistleblower Act.

      2.      <u>It is Implausible that McGinn's Termination was the Result of</u>
                    <u>Whistleblowing About Activity that May Not Even Be Illegal And</u>
                    <u>Allegedly Occurred Nearly Three Years Prior to His Termination.</u>

Even the allegations that have a tenuous connection to unlawful activity, on their face, do

not suggest illegal activity or activity that McGinn may have reasonably perceived to be illegal.

McGinn's allegation that the Secretary asked McGinn to "look into" a new neighbor that had

recently moved in the Secretary's neighborhood using "a law enforcement database," Complaint

¶¶ 12-14, on its face does not necessarily compel the conclusion that the Secretary asked

McGinn to engage in illegal activity.  While McGinn avers that it is "illegal to access CJIS

information system without a legitimate law enforcement purpose," *id.* ¶ 14, the Complaint does

not allege that the Secretary asked McGinn to use that specific database, only that McGinn

assumed that was the database the Secretary wanted him to use.  *Id.* ¶¶ 12-13.

Similarly, McGinn's allegation that he was asked to "assist" the Secretary with a

speeding ticket, Complaint ¶¶ 29-34, also does not suggest illegal activity on its face, only that

the Secretary asked for advice on how to resolve the ticket—which, by McGinn's own account,

he provided.  *See id.* ¶ 31 ("Colonel [McGinn] appropriately advised Defendant Beaton to submit

the citation for a hearing and let a Clerk Magistrate rule on it.").  These allegations do not allege

actual illegal activity on behalf of the State Defendants.

Even if these allegations are generously construed to allege illegal activity, or activity

that McGinn reasonably perceived to be illegal, his claim under the Whistleblower Act should

still be dismissed because it is implausible that actions in April 2015 and 2016 led to his eventual

termination in October 2018.  *See, e.g., McGunigle v. City of Quincy*, 835 F.3d 192, 204 (1st Cir.

2016) (five year gap between protected speech and discharge is "too long to support an inference

of a causal connection"); *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 17 (1st Cir. 2011)

("[A]n interval of [fourteen months] cannot establish the necessary linkage between protected

speech and some challenged action."); *Lewis*, 321 F.3d at 219 (temporal gap of "over a year and

a half before [the plaintiff] was terminated . . . seriously undermines his temporal proximity

argument").

On its face, McGinn's Complaint does no more than state his speculations about the

reasoning behind his termination.  With respect to McGinn's allegation that in April 215, the

Secretary asked McGinn to "look into" the Secretary's neighbor, Complaint ¶¶ 12-14, it is

implausible that McGinn's subsequent refusal to use an internal database (that the Secretary may

not have even asked him to use) led to McGinn's eventual termination three and a half years

later, in October 2018.  McGinn only alleges that in response to his refusal to access the CJIS

database, the Secretary became "hostile."  *Id.* ¶ 29.  McGinn does not allege that the Secretary

ever made the same request or even referenced it at any point over the next three and a half

years.  With respect to McGinn's allegation that the Secretary asked McGinn to "assist" the

Secretary with a speeding ticket in March 2016, *id.* ¶¶ 30, 32, it is implausible that McGinn's

advice to submit the citation for a hearing, *id.* ¶¶ 31, 33, led to McGinn's termination two and a

half years later, in October 2018.  McGinn only alleges that in response to McGinn's advice, the

Secretary was "upset."  *Id.* ¶ 34.  McGinn does not allege that the Secretary ever asked McGinn

to "assist" him with another ticket, or even talked about tickets, over the next two and a half

years.

> 3. <u>McGinn Failed to Deliver the Required "Written Notice" under the Act.</u>

Finally, to the extent that McGinn claims that he is entitled to protection for "disclosing"

allegedly illegal activities at EEA, Complaint ¶ 110, McGinn has failed to allege that he

delivered the required "written notice" to his "supervisor" about his complaints.  *See* G.L. c. 149,

§ 185(b)(1).  He further fails to allege that, following the written notice to his supervisor, he

provided the State Defendants "a reasonable opportunity to correct the . . . practice."  *Id.*

McGinn's sole allegations of written notice of his objections concern letters that he sent to the

State Defendants in January and April 2019, Complaint ¶¶ 97, 101, months *after* he was

terminated.  At that point, the Secretary was no longer his "supervisor" and, having been

terminated, McGinn could not have provided the State Defendants any opportunity to cure.  *See*

*id.*  Accordingly, even if McGinn properly alleged a violation of law, for those activities that

McGinn allegedly disclosed to the Secretary, his claims would fail for the independent reasons of

lack of written notice to his supervisor and an opportunity to cure.  *See Bolduc*, 629 F. Supp. 2d

at 154 (because plaintiff did not give written notice until four months after he was terminated,

plaintiff was not entitled to whistleblower protections under G.L. c. 149, § 185(b)(1); *Perry v.*

*Agnew*, 67 Mass. App. Ct. 1117, 2006 WL 3422214, at *1 (Nov. 28, 2006) (1:28 decision)

(affirming grant of motion to dismiss where complaint failed to allege notice required by

Whistleblower Act).

### C.   Count III: McGinn Cannot State a Claim Under the Massachusetts Civil Rights Act.

1.   <u>By Bringing a Whistleblower Claim, McGinn has Waived his Right to Assert An MCRA Claim.</u>

McGinn's MCRA claim is waived by his Whistleblower Act claim.  The institution of a

statutory whistleblower action is deemed a waiver by the plaintiff of "the rights and remedies

available to him, for the actions of the employer, under any other contract, collective bargaining

agreement, state law rule or regulation, or under the common law."  G.L. c. 149, § 185(f).  This

provision "has been consistently construed in reported decisions at the trial court level to bar the

assertion of statutory and common law damage claims that in substance derive from the same

conduct forming the basis for a retaliation claim instituted under G.L. c. 149, § 185(d)."

*Fitzgerald v. Commonwealth*, 2015 WL 924984, at *2 (Mass. Super. Mar. 3, 2015); *see also*

*Oberg v. Taunton*, 972 F. Supp. 2d 174, 191-92 (D. Mass. 2013) (had plaintiff instituted a

whistleblower action within the statute of limitations, plaintiff's state statutory and common law

claims against his employer would have been waived); *Bolduc*, 629 F. Supp. 2d at 156-57 (by

choosing to proceed with a whistleblower claim, plaintiff waived MCRA claim against his

employer); *Bennett*, 230 F. Supp. 2d at 221 (granting motion to dismiss under 12(b)(6) where

claims against employer could be pursued via the Whistleblower Act).

Count III, the MCRA claim, does not set forth any factual allegations distinct from Count II, the whistleblower claim.  Rather, Count III's claims appear to be based on the very same set of events that led to his termination, which is at the core of his whistleblower claim, and therefore the waiver provision applies to waive any claim McGinn may have under the MCRA. *See Bolduc*, 629 F. Supp. 2d at 157 (claims under the MCRA are waived by the filing of a claim under the Whistleblower Act where both claims are based on the same underlying facts).

> 2. <u>The Commonwealth, its Agencies, and Individuals Acting in Their Official Capacity Are Not "Persons" Under the MCRA.</u>

McGinn's claim under the MCRA against the State Defendants also fails because the MCRA does not provide for claims against either state agencies or individuals sued in their official capacity.  *Maraj*, 836 F. Supp. 2d at 30.  The MCRA provides a cause of action "[w]henever any *person or persons*, whether or not acting under color of law, interfere by threats, intimidation or coercion, . . . with the exercise or enjoyment . . . of rights secured by the constitution or laws of the United States."  G.L. c. 12, § 11H (emphasis added); *see id.*, § 11I.

First, McGinn cannot raise an MCRA claim against either the EEA or MEP; neither the state nor its agencies are considered "persons" for the purposes of the statute.  *Muldoon v. Dep't of Corr.*, 2017 WL 506250, at *3 (D. Mass. Feb. 7, 2017); *Latimore v. Suffolk Cty. House of Corr.*, 2015 WL 7737327, at *6 (D. Mass. Dec. 1, 2015); *Maraj*, 836 F. Supp. 2d at 30.  Because both the EEA and the MEP are part of the Commonwealth, neither the EEA nor the MEP are a "person" within the meaning of the MCRA.  Second, McGinn cannot raise an MCRA claim against the Secretary in his official capacity because he does not qualify as a "person" under the MCRA.  *Muldoon*, 2017 WL 506250, at *3 (granting motion to dismiss under 12(b)(6) where MCRA claims against state officials in their official capacities because they do not qualify as

"persons" under the MCRA); *Greene v. Cabral*, 2015 WL 4270173, at \*10 (D. Mass. Jul. 13, 2015) (same); *Maraj*, 836 F. Supp. 2d at 30 (same).

### D. Count IV: McGinn Cannot State a Common Law Claim that He was Terminated in Violation of Public Policy.

#### 1. By Bringing a Whistleblower Claim, McGinn has Waived his Right to Assert a Common Law Claim for Termination in Violation of Public Policy.

For the same reasons discussed *supra*, McGinn's Count IV common law claim is waived by his whistleblower claim in Count II. G.L. c. 149, § 185(f) ("[T]he institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under . . . the common law."). Here, McGinn's wrongful termination claim is identical to his whistleblower claim, albeit under a new name. Accordingly, McGinn's wrongful termination claim should also be dismissed pursuant to the waiver provision of the Whistleblower Act.

#### 2. The Commonwealth, its Agencies, and Individuals Acting in Their Official Capacity Are Immune from Intentional Torts.

Moreover, under the Massachusetts Tort Claim Act ("MTCA"), public entities are immune from all claims arising out of an intentional tort. G.L. c. 258, § 10(c) (providing immunity for "any claim arising out of an intentional tort . . . ."). Count IV pleads a claim for "wrongful termination in violation of public policy," which is recognized as an intentional tort in Massachusetts. *See Holie Donut, Inc.*, 82 Mass. App. Ct. at 636 (construing claims for wrongful termination of an at-will employee as a tort); *see also Owens v. Nat'l Med. Care, Inc.*, 337 F. Supp. 2d 131, 143 (D.D.C. 2004) (same); *Worley v. Providence Physician Servs. Co.*, 175 Wash. App. 566, 573 (Wash. 2013) (same). Although termination of an at will employee is not enumerated as an intentional tort in the MTCA, sovereign immunity still applies. *See Kelley v. LaForce*, 288 F.3d 1, 13 (1st Cir. 2002) (conversion, though not enumerated as a tort in the

MTCA, is an intentional tort, thereby barring the claim against the defendant); *Wentworth Precious Metals, LLC v. City of Everett*, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (civil conspiracy, though not enumerated as a tort in the MTCA, is an intentional tort, thereby barring the claim against the defendant).  Therefore, Count IV also fails because it pleads an intentional tort barred by the MTCA.

     **E.**     **The MEP Is Not A Proper Defendant In This Suit.**

     The MEP is not a proper defendant in this suit because it is a division of the EEA, not its own agency.  *See* G.L. c. 21A, § 8 ("The office of the secretary [of the EEA] shall include the office of law enforcement. . . .").  With respect to McGinn's § 1983 claim, the MEP, a subdivision of the EEA, is not a "person" subject to suit within the meaning of the statute. *Rodriguez v. County of Contra Costa*, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) ("Although municipalities, such as cities and counties, are amenable to suit under [§ 1983], sub-departments or bureaus of municipalities, such as the police departments, are  not generally considered 'persons' within the meaning of § 1983.") (quotation omitted).  Similarly, with respect to McGinn's whistleblower claim, the MEP is not McGinn's "employer" and is thus not subject to suit.  G.L. c. 149, § 185(b) ("An employer shall not take retaliatory action against an employee . . ."); *id.* at § 185(a)(2) (defining "employer" as the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, town, counties, and regional school district, or any authority, commission, board of instrumentality thereof").  Rather, McGinn's employer is EEA.  G.L. c. 21A, § 10A ("The secretary [of the EEA] shall appoint the director [of law enforcement] . . .").  The MEP does not qualify as McGinn's employer for purposes of the Whistleblower Act because the MEP did not control his employment as Colonel of the MEP. Naming the MEP as a defendant in this case is improper and redundant; by naming the EEA as a defendant, McGinn has already involved the MEP as a division of the EEA.

## IV.  CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that this Court

dismiss all the claims against the State Defendants in their entirety.

EXECUTIVE OFFICE OF ENERGY AND
ENVIRONMENTAL AFFAIRS,
MASSACHUSETTS ENVIRONMENTAL
POLICE, and SECRETARY MATTHEW A.
BEATON IN HIS OFFICIAL CAPACITY

By its attorneys,

/s/ David S. Mackey
David S. Mackey (BBO# 542277)
*Special Assistant Attorney General*
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
Tel: (617) 621-6531
Fax: (617) 621-6631
dmackey@andersonkreiger.com

Dated:  October 15, 2019

### Certificate of Service

I hereby certify that a true and accurate copy of this document was filed
through the Electronic Case Filing system, and will be served upon the attorney of
record for each party registered to receive electronic service, and that a true copy
of this document was served upon the attorney of record for James McGinn by
mail, on this 15th day of October, 2019.

/s/ David S. Mackey
David S. Mackey