UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COLONEL JAMES MCGINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:19-cv-11551-DLC |
| | ) | |
| EXECUTIVE OFFICE OF ENERGY AND | ) | |
| ENVIRONMENTAL AFFAIRS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MATTHEW BEATON'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS

Defendant, Matthew Beaton ("Secretary Beaton"), submits this Memorandum in Support of his Motion to Dismiss the Complaint against him in his individual capacity.[1]

By way of background, the plaintiff, James McGinn ("McGinn"), brought this instant litigation against the Executive Office of Energy and Environmental Affairs ("EEA"), the Massachusetts Environmental Police ("MEP"), and the former EEA Secretary Matthew Beaton, individually and in his official capacity ("Secretary Beaton") alleging that on October 19, 2018 he was wrongfully terminated from his position as Colonel of the Massachusetts Environmental Police ("MEP"), and was retaliated against for raising a number of complaints and concerns about management practices at MEP.   Plaintiff has failed to state a claim against Secretary Beaton upon which relief may be granted, as required by Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] The applicable counts of the Complaint against Secretary Beaton, individually, are: Count I, a civil rights claim under 42 U.S.C. § 1983; Count III, alleging wrongful termination under Massachusetts Civil Rights Act ("MCRA"); and Count IV, which is recitation of McGinn's claim for wrongful termination under common law.   Secretary Beaton is also represented by Special Assistant Attorney General David S. Mackey with respect to any allegations made against him in his official capacity.  Accordingly, Secretary Beaton adopts and incorporates by reference those arguments raised by Attorney Mackey in his Motion to Dismiss filed on behalf of the remaining Defendants.

## Legal Standard for a Motion to Dismiss

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Failure to meet this standard requires dismissal of the action.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's *obligation* to provide the 'grounds' of his 'entitlement to relief' requires *more than labels and conclusions* . . . ."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (emphasis added).  Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (<u>citing</u> <u>Twombly</u>, 550 U.S. at 555).   A plaintiff must "give the defendant fair notice of what the . . . claim is and *the grounds upon which it rests* . . . ."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted) (emphasis added).   A complaint is not sufficient "if it tenders 'naked assertions' devoid of 'further factual enhancement.'  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 557).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  <u>Twombly</u>, 550 U.S. at 555 (citing C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action").  It must "contain *sufficient factual matter* . . . to state a claim to relief that is plausible on its face."  <u>In re Curran</u>, 855 F.3d 19, 25 (1st Cir. 2017) (quoting <u>Iqbal</u>, 556 U.S. at 678) (emphasis added).  "If the facts articulated in the complaint are '*too meager*, *vague*, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss."  <u>In re Curran</u>, 855 F.3d 19, 25 (1st Cir. 2017) (quoting <u>SEC v. Tambone</u>, 597 F.3d 436, 442 (1st Cir.

2010) (en banc)) (emphasis added).  To survive, the facts must "possess enough heft to show that [Plaintiff is] entitled to relief."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (internal quotation marks omitted) (quotation omitted).  A claim lacks "facial plausibility" when the plaintiff does not plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  Id.  Specifically, with respect to the retaliation and whistleblower claims of the sort raised by McGinn, courts have not hesitated to dismiss where the plaintiff has not stated a plausible claim.  E.g., Perkins v. Attleboro, 969 F. Supp. 2d 158, 173 (D. Mass. 2013) (granting motion to dismiss retaliation claim under 12(b)(6) where plaintiff's letter about management decisions was not First Amendment protected speech).  Here, the Plaintiff's "shotgun" approach to raising allegations in his Complaint falls short of the specificity required to survive a motion to dismiss

## ARGUMENT

### A.     Count I:  McGinn Fails to Articulate a Claim Under 42 U.S.C. §1983

Count I, styled as a civil rights claim under 42 U.S.C. §1983, alleges that McGinn's termination constituted improper interference with his Constitutional right to free speech, as well as his rights to continued employment, to participate in concerted activity, to due process, and to petition and seek redress from governmental abuse.  Complaint ¶¶ 105-108.  This claim fails on all counts.

First, McGinn's alleged constitutional violations – of his rights to participate in concerted activity, and to petition and seek redress from governmental abuse – fail because his Complaint does not allege, in any way, how those rights were violated.  Specifically, McGinn fails to state anywhere in the Complaint that he acted in concert with or on behalf of anyone.  He also fails to state what action was allegedly concerted.  McGinn also fails to identify in his Complaint any specific petitioning activity that he undertook that is separate and apart from his objections and

complaints to superiors about certain acts and policies within the MEP.  For instance, McGinn

makes no allegations that his retaliation was a result of a lawsuit that he filed or a letter that he

wrote to a legislator.  His only allegations concern complaints, objections, and refusal to

participate in activities *within* the Executive Office of Environmental Affairs.

Second, McGinn was an employee at will.  See G.L. c. 21A, §10A ("The secretary [of the

EEA] shall appoint the director [of law enforcement] and may remove him.").  Accordingly,

McGinn had no constitutional right to continued employment, nor any other constitutional right

with respect to his activities as an at-will employee.  Ventetuolo v. Burke, 596 F.2d 476, 481 (1st

Cir. 1979) ("A constitutionally protected property interest has not been recognized where the

employee serves at the will and pleasure of the public employer.")  Moreover, McGinn failed to

set forth any facts that demonstrate that he even had a protected interest in continued

employment, which is a requirement for due process to attach to government employment.  See

Beaney v. Univ. of Maine Sys., No. 2:16-CV-00544-JDL, 2017 WL 782882, at *6 (D. Me. Feb.

28, 2017) ("A general allegation that this protected interest existed asserts a legal conclusion,

rather than a fact, and therefore is not entitled to the presumption of truth.  In order to state a

claim, the Complaint must allege facts, not merely legal conclusions, that plausibly suggest that

Plaintiff had a protected interest in his continued employment.  Beyond the length of his

employment . . . [the] Complaint does not contain any specific factual allegations regarding the

'terms and conditions' of his employment that suggest that they gave rise to a protected

interest").

Third, insofar as Count I alleged a violation of McGinn's right to free speech, McGinn's §1983 claim must fail because McGinn has not alleged that he engaged in any speech protected by the First Amendment.[2]

**1.    McGinn's alleged statements were not on matters of public concern, and therefore his claim must fail.**

A necessary element of a claim for unconstitutional retaliation in a public employee speech case is that the employee must have spoken on a matter of public concern *as a citizen*, not as an employee.  See Diaz-Bigio v. Santini, 652 F.3d 45, 51 (1st Cir. 2011) (citing Decotiis, 635 F.3d at 29–30; Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).  Without that element, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  Diaz-Bigio v. Santini, 652 F.3d 45, 51 (1st Cir. 2011) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).  "[T]he Supreme Court [has] held that public employees do not speak as citizens when they 'make statements pursuant to their official duties,' and that accordingly, such speech is not protected by the First Amendment."  Decotiis v. Whittemore, 635 F.3d 22, 30 (1st Cir. 2011) (quoting Garcetti v. Ceballos, 547 U.S. 410, 421).

In determining whether speech by a public employee was made as a citizen, the Court looks at (i) the employee's official responsibilities and (ii) whether the speech at issue was made pursuant to those responsibilities.  See Decotiis v. Whittemore, 635 F.3d 22, 31 (1st Cir. 2011) (citing Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18 (1st Cir. 2010)).

---

[2] There are three elements for a First Amendment claim.  "First, a court must determine whether the employee spoke as a citizen on a matter of public concern. Second, the court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, the employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision.  If all three parts of the inquiry are resolved in favor of the plaintiff, the employer may still escape liability if it can show that it would have reached the same decision even absent the protected conduct."  Decotiis v. Whittemore, 635 F.3d 22, 29–30 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted).

With respect to the first prong of this analysis, there can be little debate that as the top official in Environmental Police, McGinn's "speech", as alleged in his Complaint, fell within the official responsibilities of his position.  See Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes").  In fact, McGinn sets forth in his Complaint that "[a]s the Departmental head of the Environmental Police, Colonel McGinn had the *managerial authority, indeed the responsibility*, to investigate these employment issues and to take the appropriate steps to ensure that public funds were being properly spent for work actually performed.  He also had the *responsibility* to maintain the security of a law enforcement facility under his control."  Complaint, ¶ 71 (emphasis added).

Similarly, with respect to the second prong of the examination, the only credible reading of the allegations made in the Complaint is that McGinn's "speech" was made pursuant to his official responsibilities and not as a private citizen.   For instance, McGinn's complaints were made to Secretary Beaton about a perceived lack of accountability in the MEP, in furtherance of his role as the Colonel of the MEP, and concerned issues relating to the management and policies of the MEP.  Thus, McGinn voiced his complaints not as a private citizen, but pursuant to his official duties because they were "part and parcel of his concerns about his ability to properly execute his duties."  Perkins, 969 F. Supp. 2d at 173 (citations omitted).   In Decotiis, the First Circuit set forth its guide for answering this inquiry by stating:

> Although no one contextual factor is dispositive, we believe several non-exclusive factors, gleaned from the case law, are instructive:  [1] whether the employee was commissioned or paid to make the speech in question; [2] the subject matter of the speech; [3] whether the speech was made up the chain of command; [4] whether the employee spoke at her place of employment; [5] whether the speech gave objective observers the impression that the employee represented the employer when she

spoke (lending it 'official significance'); [6] whether the employee's speech derived from special knowledge obtained during the course of her employment; and [7] whether there is a so-called citizen analogue to the speech.

Decotiis v. Whittemore, 635 F.3d 22, 32 (1st Cir. 2011) (citations omitted).

Applying the Decotiis factors here, the speech at issue unquestionably arose from McGinn's position as Colonel of the MEP, for which he was compensated (factor no. 1);  the subject of the speech concerned activity and practices within the MEP (factor no. 2); the objections and complaints were voiced to his supervisor, Secretary Beaton, following the chain of command (factor no. 3); and McGinn did so, within the confines of the MEP (factor no. 4); and based on special knowledge he derived from the course of his employment with the MEP (factor no. 6). Thus, the speech in question is not protected by the First Amendment.  See Diaz-Bigio v. Santini, 652 F.3d 45, 51 (1st Cir. 2011); Decotiis v. Whittemore, 635 F.3d 22, 30 (1st Cir. 2011); see also Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 486 (D. Mass. 2018) (applying the Decotiis factors and finding that police officer's speech complaining about superior's actions was not protected by the First Amendment).  Consequently, McGinn's speech fails to garner constitutional protection afforded by the First Amendment and Count I must be dismissed.  See Perkins, 969 F. Supp. 2d at 173-74.

## 2. Secretary Beaton is Entitled to Qualified Immunity in His Individual Capacity

Even assuming *arguendo* that the speech in question is afforded protection under the First Amendment, Count I should nonetheless be dismissed against Secretary Beaton in his individual capacity because he is shielded from such suit by the doctrine of qualified immunity.

"A claim of qualified immunity is appropriately considered in connection with a motion to dismiss." Smith v. Maine Sch. Admin. Dist. No. 6, No. 00-284-P-C, 2001 WL 68305, at *7 (D. Me. Jan. 29, 2001) (citing El Dia, Inc. v. Rossello, 165 F.3d 106, 108–09 (1st Cir.1999)).

The purpose of considering qualified immunity at the motion to dismiss stage is to prevent the costs of litigation where the defense is dispositive.  See Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided"); Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003) (same); see also, Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994) (qualified immunity "is appropriately decided by the court during the early stages of the proceedings").  The determination of qualified immunity is a question of law, not fact, and is reserved for the court.  See Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994); Whiting v. Kirk, 960 F.2d 248, 250 (1st Cir. 1992), as amended (Apr. 14, 1992).

"The doctrine of qualified immunity protects public officials 'from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.'"  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)) (emphasis added).  "It provides 'immunity from suit and not a mere defense to liability.'"  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009)).  In addition, qualified immunity is intended to prevent costly, lengthy, and disruptive litigation into the subjective intent behind decisions of government officials and to prevent a chilling effect on the government service of those officials.  See Harlow v. Fitzgerald, 457 U.S. 800, 816-17 and n.29, 102 S. Ct. 2727, 2737, 73 L. Ed. 2d 396 (1982).  "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted).

The First Circuit has identified the test for qualified immunity as follows:

> The Court follows a two-prong analysis for determining whether defendants are entitled to qualified immunity, asking (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation.  The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official. The salient question is whether the state of the law at the time gave a defendant clear notice that what he was doing was unconstitutional.

Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted).

Subpart (a) of the second prong[3] of the qualified immunity test asks whether the legal contours of the right in question were sufficiently clear[4] that a reasonable official would have understood that what he was doing violated that right.  Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011).  That question must be answered in the negative here.  "A right is clearly established and immunity will not issue *only if every* reasonable official would have understood that what he is doing violates that right.  If officers of reasonable competence could disagree on the lawfulness of the action, they are entitled to immunity."  Diaz-Bigio v. Santini, 652 F.3d 45, 50–51 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted) (emphasis added).

First, as demonstrated *supra*, the determination of whether a right to free speech *even existed* in this context is subject to a determination by the Court amid *a series of non-exclusive illustrative factors* concerning whether McGinn spoke as a public employee or as a citizen.  See

---

[3] The first prong is addressed above where Defendant argues that the First Amendment does not protect the speech as issue because McGinn spoke as a public employee, not as a citizen.  There is no need to readdress the same argument under prong one of the qualified immunity test.

[4] "[F]or the right to be clearly established, the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with 'fair warning.'"  Decotiis v. Whittemore, 635 F.3d 22, 37 (1st Cir. 2011) (citations omitted).  The Plaintiff cannot do that here.

Decotiis v. Whittemore, 635 F.3d 22, 32 (1st Cir. 2011); see also, Meagher v. Andover Sch.

Comm., 94 F. Supp. 3d 21, 43 (D. Mass. 2015) (finding that there was no clearly established

right in an employee speech context because the Decotiis factors make the First Amendment

right "cloudy"); Thomas v. Town of Salisbury, 277 F. Supp. 3d 161, 175 (D. Mass. 2017)

(finding that it would not be unreasonable for an official to find that a police officer complaining

about his supervisor's conduct was not protected speech).  As such, there was no "clearly

established" rule that would have identified McGinn's speech as that of a citizen, carrying with it

the protections of the First Amendment.

Second, even if McGinn spoke as a citizen, the speech must meet the other elements of

the three-part test concerning speech by a public employee, which includes the balancing of the

interests of the employee, as a citizen, in commenting upon matters of public concern and the

interest of the State, as an employer, in promoting the efficiency of the public services it

performs through its employees.  See Decotiis v. Whittemore, 635 F.3d 22, 29–30 (1st Cir.

2011).  The First Circuit has stated that such a balancing test, known as *Pickering balancing*, is

"difficult to apply" and that "only in the *extraordinary case* will it have been *clearly established*

that a public employee's speech merited constitutional protection."  Diaz-Bigio v. Santini, 652

F.3d 45, 53 (1st Cir. 2011) (citations omitted) (emphasis added); see also Fabiano v. Hopkins,

352 F.3d 447, 457 (1st Cir. 2003) ("[b]ecause *Pickering's* constitutional rule turns upon a fact-

intensive balancing test, it can rarely be considered 'clearly established' for purposes of qualified

immunity."); Meagher v. Andover Sch. Comm., 94 F. Supp. 3d 21, 43 (D. Mass. 2015) (finding

that even if the public employee has spoken as a citizen, *Pickering* balancing would mean that

the right was not clear except in the *extraordinary* case).  Here, this is not the extraordinary case

that would make the right clear.  Indeed, McGinn identifies in his Complaint that he frequently

objected to and complained to Secretary Beaton.  Such frequent complaints could be determined

to be legitimate concerns of the government in preventing disruptive speech within the

department if *Pickering* balancing were conducted.  See e.g., Dirrane v. Brookline Police Dep't,

315 F.3d 65, 71 (1st Cir. 2002) (affirming qualified immunity where plaintiff had made frequent

complaints to superiors).  Moreover, the courts have held that loyalty, discipline, and harmony

within law enforcement are legitimate concerns in limiting employees' speech.  See Jordan v.

Carter, 428 F.3d 67, 74 (1st Cir. 2005) ("the government's interest is particularly acute in the

context of law enforcement, where there is a heightened interest in maintaining discipline and

harmony among employees"); McGunigle v. City of Quincy, 132 F. Supp. 3d 155, 172–73 (D.

Mass. 2015), aff'd, 835 F.3d 192 (1st Cir. 2016) (law enforcement agencies have a strong interest

in maintaining the obedience and loyalty of employees and in maintaining proper discipline).

Thus, it cannot be said that the legal contours of the right in question were *sufficiently clear* that

a reasonable official would have understood that what he was doing violated that right.  As such,

Secretary Beaton is entitled to qualified immunity here.[5]

### B.      Dismissal of Remaining State law Claims

First, there are no well-pled facts in the Complaint as to how Secretary Beaton

threatened, intimidated, or coerced McGinn.  See Bally v. Northeastern University, 403 Mass.

713, 717, *532* N.E. 2d 49, 51-52 (1989); Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390,

395 (1996).  A threat, intimidation or coercion is essential to a claim under the MCRA.  See

Broderick v. Roache, 803 F.Supp. 480, 485 (D.Mass 1992).  McGinn's Complaint does nothing

more than state his speculations about the reasoning behind his termination, the majority of

---

[5] The second subpart of the qualified immunity test is redundant here because of the *Pickering* balancing test that
goes into a qualified immunity defense in a First Amendment claim.

which are two and three years old.  With respect to McGinn's allegation that in April 2015, the

Secretary asked McGinn to "look into" the Secretary's neighbor, Complaint ¶¶ 12-14, it is

implausible that McGinn's subsequent refusal to do so led to McGinn's eventual termination

three and a half years later, in October 2018.  Notably, McGinn does not allege that the Secretary

ever made the same request or even referenced it at any point over the next three and a half

years.  With respect to McGinn's allegation that the Secretary asked McGinn to "assist" the

Secretary with a speeding ticket in March 2016, *id.* ¶¶ 30, 32, it is implausible that McGinn's

advice to submit the citation for a hearing, *id.* ¶¶ 31, 33, led to McGinn's termination two and a

half years later, in October 2018.  McGinn only alleges that in response to McGinn's advice, the

Secretary was "upset."  *Id.* ¶ 34.  Again, McGinn does not allege that the Secretary ever asked

McGinn to "assist" him with another ticket, or even talked about tickets, over the next two and a

half years.

Lastly, even assuming *arguendo* that Counts III and IV of the Complaint survive a

motion to dismiss on the pleading standard, this Court should dismiss this action and order the

Plaintiff to file his remaining state law claims in state court.  The First Circuit has held that in

accord with guidance from the Supreme Court, "when all federal claims have been dismissed, it

is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state

law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience,

and comity.'"  Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (citing Desjardins v. Willard,

777 F.3d 43, 45-46 (1st Cir. 2015); Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d

387, 392 (1st Cir. 2014)).  The First Circuit has also held that "under this standard, it can be an

abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a

pendent state law claim when that state law claim presents a substantial question of state law that

is better addressed by the state courts." <u>Wilber v. Curtis</u>, 872 F.3d 15, 23 (1st Cir. 2017) (citing

<u>Desjardins</u>, 777 F.3d at 45-46).  As such, the remaining state law claims should be dismissed and

dealt with in an appropriate state court.

## **<u>CONCLUSION</u>**

Wherefore, for the foregoing reasons, Defendant, Matthew Beaton, requests that this

Honorable Court dismiss this Action in its entirety against him.

MATTHEW BEATON

By His Attorneys,

*/s/ Douglas T. Radigan*
Douglas T. Radigan (BBO #657938)
Jared A. Fiore (BBO #684997)
BOWDITCH & DEWEY, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
Telephone:  508-926-3416
Facsimile:  508-929-3116
E-mail:  dradigan@bowditch.com
E-mail:  jfiore@bowditch.com

CERTIFICATE OF SERVICE

I certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 15, 2019.


/s/ Douglas T. Radigan
Douglas T. Radigan