UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES MCGINN,<br><br>        Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS, MASSACHUSETTS ENVIRONMENTAL POLICE, SECRETARY KATHLEEN A. THEOHARIDES IN HER OFFICIAL CAPACITY, and MATTHEW A. BEATON IN HIS INDIVIDUAL CAPACITY,<br><br>        Defendants. | Civil Action No. 19-CV-11551-IT<br><br>*Leave to file granted on November 6, 2019* |

### REPLY MEMORANDUM OF THE STATE DEFENDANTS
### IN SUPPORT OF THEIR MOTION TO DISMISS

The Executive Office of Energy and Environmental Affairs ("EEA"), the Massachusetts Environmental Police ("MEP"), and EEA Secretary Kathleen A. Theoharides sued in her official capacity[1] ("Secretary") (collectively, the "State Defendants"), submit this reply memorandum in support of their motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Nothing in the Complaint or Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") by plaintiff James McGinn ("McGinn") demonstrates that any of his claims are viable. In his pleadings, McGinn purports to tell the tale of a whistleblower, adds an unsustainable First Amendment claim to qualify for jurisdiction in this Court, and includes, based on the same facts, three additional state law claims that are barred by well-settled law. In fact, however, McGinn was not a whistleblower, but instead a senior officer who made

---

[1] Kathleen A. Theoharides succeeded Matthew A. Beaton as the Secretary of the EEA on May 3, 2019. However, none of McGinn's claims concern conduct by the current Secretary.

complaints to supervisors and colleagues about matters that he, as Colonel, was charged with—but ultimately failed—in managing the police department he was hired to lead.

I.      **Count I, McGinn's § 1983 Claim, Fails at the Threshold**

      A.      **McGinn Was Not Speaking as a Citizen When He Sought Support From the Secretary and Others Regarding His Difficulty Managing His Employees**

McGinn's primary argument in support of his First Amendment claim is that because his speech was "typical of the concerns that any reasonable citizen would also have in the circumstances" and "raise[d] concerns that are not limited to the plaintiff in his professional capacity, but can reasonably be raised by anyone," his speech was not made pursuant to his employment and is therefore protected by the First Amendment.  Opposition at 15.

McGinn's argument fails because he applies the wrong standard – the pertinent test for determining whether a public employee spoke as a citizen is not whether a citizen could reasonably have the same concerns (the standard McGinn argues without citing any authority), but whether the public employee's speech was made *pursuant* to their official duties.  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  As this Court has recognized, "'the critical question [under *Garcetti*] is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'"  *Pomponio v. Town of Ashland*, 2016 WL 471285, at *5 (D. Mass. Feb. 5, 2016) (Talwani, J.) (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)); *see also Jackler v. Byrne*, 658 F.3d 225, 237 (2nd Cir. 2011) ("As a rule of thumb, activities required of the employee as part of his employment duties are not 'performed as a citizen' . . . .") (citations omitted).[2]

---

[2] McGinn also argues that because "his complaints were matters of public concern . . . [he] was speaking as a citizen." Opposition at 16.  This argument also fails because it erroneously collapses the two prongs of the *Garcetti* threshold analysis.  547 U.S. at 417; *see Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007) ("*Garcetti* recognizes that this first step itself has two

The vast majority of the Complaint relates to McGinn's management of the police department he was hired to lead, and to various human resources policies and practices of that department. Thus, McGinn's speech was made pursuant to his official duties as the head of the MEP because management of MEP employees, and any concerns that may arise from that management, are exactly what McGinn was employed to speak about. Complaint ¶ 71 ("As the Departmental head of the Environmental Police, [he] had the managerial authority, *indeed the responsibility*, to investigate [] employment issues and to take appropriate steps to ensure that public funds were being properly spent. . . .") (emphasis added). McGinn now attempts to reclassify his speech as concerning potential fraud, Opposition at 15, yet the Complaint centers on the lack of support he received from EEA legal and human resource professionals and the Secretary when he raised concerns about how to appropriately manage his own employees. *See, e.g.*, Complaint ¶ 55 ("[McGinn's] objections about the delay in processing this officer's injured on duty claim were not well received by either Secretary Beaton or the Legal Department . . . ."); *id.* ¶ 65 (alleging the Secretary told McGinn to "keep a lid on things" when McGinn told the Secretary about an MEP officer's unexcused absence). Thus, when McGinn raised concerns about management practices he was speaking as his job required him to and not as a citizen, and therefore his claim must fail. *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 173 (D. Mass. 2013) (granting motion to dismiss under 12(b)(6) where plaintiff's letter about management decisions was part and parcel of his concerns about his ability to execute his duties as a supervisor).

---

subparts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern."); *O'Brien v. Robbins*, 679 F. Supp. 2d 212, 217 (D. Mass 2010) (both *Garcetti* subparts must be independently answered in the affirmative to engage in protected speech). Thus, even if McGinn spoke about matters of public concern, he could not demonstrate that he spoke as a citizen on that ground alone.

McGinn also argues that even though he may be subject to "garden-variety" rules requiring reports of illegal activity, such rules "do not trump First Amendment rights as to matters of public concern." Opposition at 16. In support of his argument, McGinn cites to *Taylor v. Town of Freetown*, 479 F. Supp. 2d 227 (D. Mass. 2007), and *Jackler v. Byrne*, 658 F.3d 225 (2nd Cir. 2011). These cases are inapposite and do not advance McGinn's case.

*Taylor* concerned a patrol officer who refused to engage in and reported police corruption. 479 F. Supp. 2d at 227. In *Taylor*, the court made it clear that because the plaintiff was *not* a supervisor, he "lack[ed] broad official responsibilities for ensuring that other officers [were] not engaged in misconduct." *Id.* at 237. Thus, because his duty to manage alleged violations of departmental rules and polices was peripheral to his duties as a patrol officer, his reporting of police misconduct was not pursuant to his official duties, despite the existence of a general obligation to report violations to his superior officer. *Id.* In contrast, McGinn, as the head of the MEP, *was* the supervisor with admittedly broad responsibilities to manage his own employees. Complaint ¶ 71. Thus, because McGinn's duty to report violations of departmental rules and policies is not merely peripheral to his job but constitutes one of his core responsibilities, *Taylor* is inapplicable to the case at hand.

*Jackler* concerned a police officer who refused to retract a truthful report corroborating a civilian's report about another officer's excessive use of force, and who refused to file a false one in its place. 658 F.3d at 225. In *Jackler*, the court made it clear that because the police officer's report piggy-backed on the civilian's complaint, there was an obvious civilian analogue to the police officer's report, such that the police officer was entitled to the same protections as the civilian. *Id.* at 241. Here, McGinn makes no allegations that his speech was an attempt to provide corroboration of a civilian report. McGinn makes it clear that his speech was the result

of his independent observations and investigations of his MEP employees or the observations of others in the EEA. Complaint ¶ 15 (McGinn "perceived"); *id.* ¶ 25 (McGinn investigated); *id.* ¶ 35 (McGinn witnessed); *id.* ¶ 43 (McGinn "was . . . advised" by MEP staffer); *id.* ¶ 56 (McGinn witnessed); *id.* ¶ 58 (McGinn discovered); *id.* ¶ 61 (McGinn "received reports" from EEA members). *Jackler* does not present the circumstances available here, where it was the plaintiff's job to manage subordinates and report on their behavior or alleged misconduct. Accordingly, *Jackler* is inapplicable to this case and does not constitutionalize McGinn's complaints about and personal grievances with the State Defendants.

      **B.**      **McGinn Did Not Speak on a Matter of Public Concern When His Speech Was Made in a Purely Private Channel of Communication**

McGinn also argues that in complaining to EEA's legal department, which he contends "serves a dual function as a supervising authority, [and] also a public body [to] whom anyone can report related issues," his speech was made outside the chain of command and in a public mode. Opposition at 16; *see O'Brien*, 679 F. Supp. 2d at 216 ("The court must also examine the extent to which plaintiff[] intended [his] speech to contribute to any public discourse, or if it simply reflected personal or internal [Department] concerns.") (quotations omitted).

Even if McGinn is correct that the EEA's legal department can serve as a law enforcement agency (which is itself a doubtful claim), he only alleges two instances of speaking to the legal department, indeed *his own* legal advisors, in an effort to gain advice from them in managing his own employees. *See* Complaint ¶ 49-52 (alleging McGinn spoke to the legal department about an MEP officer who had been out on injured on duty leave for nearly two years in an effort to get the EEA to retire the officer on medical disability); *id.* ¶ 60 (alleging McGinn spoke to the legal department about MEP officers' tardiness and absence in an effort to get McGinn's surveillance and monitoring requests expedited). McGinn's statements to his legal

5

department—which were presumptively protected by the attorney-client privilege and in that sense, the opposite of public speech—were merely another attempt to better manage the employees under his supervision. Throughout the entirety of his Complaint, McGinn made no allegations that he utilized a mode available to the public to raise his complaints, or even that he sought to make his complaints public. By making his complaints internally, McGinn's complaints were a matter of seeking to control his employees and not an attempt to contribute to meaningful public discourse, and therefore, did not address a matter of public concern. *See Meaney v. Dever*, 326 F.3d 283, 289 (1st Cir. 2003); *O'Brien*, 679 F. Supp. 2d at 216.

## II.     Count II, McGinn's Whistleblower Claim, Should Similarly Be Dismissed

McGinn makes two arguments in support of his whistleblower claim. First, McGinn argues that because he "reasonably believed that the conduct he was objecting to was [] illegal," he has met the prerequisites for a whistleblower claim. Opposition at 21-23.

As explained in the State Defendants' Motion to Dismiss, seven of McGinn's nine allegations are complaints about the lack of sympathetic response McGinn received from his supervisors in the EEA when he complained about his difficulties managing his police officers. State Defendants' Memorandum at 12-13. His disagreements with management policies and practices do not implicate a violation of any law, rule, or regulation. *Id*. While McGinn attempts to cure the deficiencies of these seven allegations by using the words "illegal" and "unlawful" in his Opposition, Opposition at 22-23, McGinn offers no more than labels and conclusions. Mere labels and conclusions are insufficient to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . .") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "Conclusions of law" or "bare assertions" will not suffice, *Phillips v. City of*

*Methuen*, 818 F. Supp. 2d 325, 329 (D. Mass. 2011), and neither will "a legal conclusion . . . cast in the form of a factual allegation." *Skillman v. Suffolk Jewelers and Pawnbrokers*, 2010 WL 5099365, at *3 (D. Mass. Dec. 7, 2010) (quoting *Anthony v. Ranger*, 2010 WL 1268031, at *2 (E.D. Mich. Mar. 30, 2010)). Because McGinn has not sufficiently pled the requisite elements of a statutory whistleblower claim for these seven allegations, he attempts to fill in the gaps of these seven allegations with hyperbole, for example, alleging that "the lack of accountability was *so significant*," Opposition at 22, and "even arguably *more egregious*," than the State Troopers' abuse of overtime, *id.* (emphasis added), but conclusory or subjective labels cannot save his claim. *See Phillips*, 818 F. Supp. 2d at 334. Thus, as described in the State Defendants' Motion to Dismiss, all that remains of McGinn's whistleblower claim are two allegations that have a tenuous connection to unlawful activity, and on their face, do not suggest illegal activity or activity that McGinn may have reasonably perceived to be illegal. State Defendants' Memorandum at 13-14.[3]

McGinn also argues that because the "[State] Defendants[] concede . . . that at least some of the complaints raised by McGinn concerned illegal activity . . . [that] concession alone . . . should be enough for [his whistleblower] claim to survive in light of the undisputed fact that [he]

---

[3] McGinn's allegation that the Secretary asked McGinn to "look into" a new neighbor that had recently moved in the Secretary's neighborhood using "a law enforcement database," Complaint ¶¶ 12-14, on its face does not necessarily compel the conclusion that the Secretary asked McGinn to engage in illegal activity. While McGinn avers that it is "illegal to access CJIS information system without a legitimate law enforcement purpose," *id.* ¶ 14, the Complaint does not allege that the Secretary asked McGinn to use that specific database, only that McGinn assumed that was the database the Secretary wanted him to use. *Id.* ¶¶ 12-13. Similarly, McGinn's allegation that he was asked to "assist" the Secretary with a speeding ticket, Complaint ¶¶ 29-34, also does not suggest illegal activity on its face, only that the Secretary asked for advice on how to resolve the ticket—which, by McGinn's own account, he provided. *See id.* ¶ 31 ("Colonel [McGinn] appropriately advised Defendant Beaton to submit the citation for a hearing and let a Clerk Magistrate rule on it."). These allegations do not allege actual illegal activity on behalf of the State Defendants.

was subsequently terminated. Opposition at 20-21. But even assuming that the two remaining allegations concern illegal activities, McGinn's whistleblower claim must still fail because McGinn fails to establish the causal link between his whistleblowing activity and his ultimate termination. Nowhere in his 120-paragraph Complaint or his 30-page Opposition does McGinn demonstrate that his whistleblowing activity in April 2015 or March 2016 was the impetus behind his termination in October 2018. State Defendants' Memorandum at 14-15; *see Gonzalez-Droz v. Gonzales-Colon*, 660 F.3d 1, 17 (1st Cir. 2011).[4]

### III. Count III, McGinn's MCRA Claim, and Count IV, McGinn's Wrongful Termination in Violation of Public Policy Tort Claim, Are Waived by the Institution of McGinn's Whistleblower Claim

In support of his Massachusetts Civil Rights Act ("MCRA") and wrongful termination in violation of public policy claims, McGinn argues that the waiver provision of the whistleblower statute "render[s] a forced election [between his whistleblower claim and his MCRA and Wrongful Termination in Violation of Public Policy tort claims] unfair and unjust." Opposition at 28. McGinn's argument is defeated by the plain terms of the statute: "the *institution* of a [whistleblower claim] shall be deemed a waiver by the plaintiff of the rights and remedies available to him . . . under any other . . . state law, rule or regulation, or under the common law." G.L. c. 149, § 185(f) (emphasis added); *see Fitzgerald v. Commonwealth*, 2015 WL 924984, at

---

[4] On top of the facts in McGinn's whistleblower claim, for those activities disclosed to the State Defendants pursuant to G.L. c. 149, § 185(b)(1), there is also serious doubt about whether McGinn provided adequate written notice under the whistleblower statute when he submitted whistleblower letters to the State Defendants two months and six months after his termination. *See* G.L. c. 149, § 185(c)(1); *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132 (D. Mass. 2009) (because plaintiff did not give written notice until four months after he was terminated, plaintiff was not entitled to whistleblower protection under G.L. c. 149, § 185(b)(1)); *Tryon v. Massachusetts Port Auth.*, No. SUCV2013-02518-G, at *7 (Mass. Super. Jun. 16, 2014) (plaintiff failed to satisfy written notice requirement when he did not provide any written objection until 16 months after he was terminated).

*2-4 (Mass. Super. Mar. 3, 2015) (dismissing state statutory and common law claims where such claims were waived by G.L. c. 149, § 185(f) because they overlapped with retaliation claims under the Whistleblower Act); *LePage v. Cent Mass. Reg'l Planning Comm'n*, 2009 WL 1083155, at *3 (Mass. Super. Mar. 4, 2009) (same).

Furthermore, McGinn's argument that he should be permitted to litigate all of his retaliation claims, and then elect his preferred recovery after the jury returns its verdict because G.L. c. 149, § 185(f) provides that "[n]othing in this section shall be deemed to diminish the rights, privileges or remedies of any employee under any other federal or state law or regulation," Opposition at 28-29, contravenes the clear language of the statute. As a Massachusetts state court has explained:

> [W]hile [G.L. c. 149, § 185(f)] is surely meant to preserve a plaintiff's right to elect remedies, the decision point for such election is *before* plaintiff commences an action under the Whistleblower Act and not after such action has been tried to verdict. The text plaintiff cites in Section 185(f) preserves an employee's right to choose between Whistleblower Act and other legal remedies by making clear that the statute was not meant to *preempt* all other statutory and common law causes of action.
>
> . . .
>
> But the fact that the Whistleblower Act does not preempt other statutory and common law retaliation claims does *not* mean that all of these claims may be brought concurrently. Plaintiff does have a choice of remedies, and is free to litigate statutory and common law theories of retaliation *other* than pursuant to the Whistleblower Act. Once she elects to pursue a Whistleblower Act remedy by "instituting" a claim under this statute, however, that election has been made and operates from that point forward as a waiver of all other claims resting upon the same underlying grounds.

*Fitzgerald*, 2015 WL 924984, at *3-4; *accord Reilly v. Robbins*, 2006 U.S. Dist. LEXIS 46121, at *3-4 (D. Mass. Jul. 10, 2006); *Haddad v. Scanlon*, 1999 Mass. Super. LEXIS 272, at *5, n. 4 (Mass. Super. Jul. 16, 1999). Thus, McGinn's arguments against the waiver provision of the Whistleblower Act fail on all fronts and his MCRA and tort claims must be dismissed.

**IV.     Count III, McGinn's MCRA Claim, and Count IV, McGinn's Wrongful Termination in Violation of Public Policy Tort Claim, Are Barred by Sovereign Immunity**

McGinn fails to address the State Defendants' argument that they are immune from claims under the MCRA because the MCRA does not provide for claims against either state agencies or individuals sued in their official capacity.  State Defendants' Memorandum at 17-18; *Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 20 (D. Mass. 2011).  Nor does McGinn address the State Defendants' argument that as public entities, they are immune from all claims arising out of intentional torts, including wrongful termination in violation of public policy.  State Defendants' Memorandum at 18-19; *see* G.L. c. 258, § 10(c); *Ryan v. Holie Donut, Inc.*, 82 Mass. App. Ct. 633, 636 (2012).  McGinn thus effectively concedes that the State Defendants are not proper defendants for either his MCRA or wrongful termination in violation of public policy claims, and therefore, these claims should be dismissed.

## CONCLUSION

For the reasons sets forth in their Motion to Dismiss and above, the Court should dismiss all the claims against the State Defendants.  In the alternative, if the Court determines that McGinn has failed to state a claim under 42 U.S.C. § 1983 claim, the Court could, instead of reaching the remaining claims, decline to exercise supplemental jurisdiction with respect to McGinn's state law claims and dismiss this action without prejudice.  *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS, MASSACHUSETTS ENVIRONMENTAL POLICE, and SECRETARY KATHLEEN A. THEOHARIDES IN HER OFFICIAL CAPACITY

By their attorney,

/s/ David S. Mackey
David S. Mackey (BBO #542277)
*Special Assistant Attorney General*
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
Tel: (617) 621-6531
Fax: (617) 621-6631
dmackey@andersonkreiger.com

Dated: November 18, 2019

### Certificate of Service

I hereby certify that a true copy of this document was filed through the Electronic Case Filing system, and will be served upon the attorney of record for each party registered to receive electronic service, and that a true copy of this document was served upon the attorney of record for James McGinn by mail, on this 18th day of November, 2019.

/s/ David S. Mackey
David S. Mackey