UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES MCGINN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 19-cv-11551-IT |
| EXECUTIVE OFFICE OF ENERGY AND | * | |
| ENVIRONMENTAL AFFAIRS, | * | |
| MASSACHUSETTS ENVIRONMENTAL | * | |
| POLICE, and MATTHEW A. BEATON | * | |
| in his official and individual capacity, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER
September 30, 2020

  Plaintiff James McGinn served as Colonel of the Massachusetts Environmental Police from 2015 until he was terminated in 2018. During that time, McGinn alleges that he refused to engage in unlawful activity and raised concerns about fraud and waste in the department he led. McGinn further alleges that as a result of his efforts at reform, he was wrongfully fired. McGinn now brings this action, naming the Executive Office of Energy and Environmental Affairs, its Secretary, Matthew A. Beaton, in both his official and individual capacity, and the Massachusetts Environmental Police. Plaintiff alleges the Defendants violated his rights secured by the federal Constitution as well as multiple state laws. Defendants have filed Motions to Dismiss the Complaint [#18], [#20], arguing that Plaintiff has failed to state any claim for which he may be entitled relief. As set forth below, while the court concludes that the Massachusetts Environmental Police is not a proper party to this action and that Plaintiff has not sufficiently alleged a violation of rights guaranteed by the federal Constitution because the alleged facts show that he was fired for doing his job, not for citizen speech, the court also finds that McGinn

1

has sufficiently alleged that the Executive Office of Energy and Environmental Affairs and Beaton, in his individual capacity, engaged in wrongdoing in violation of Massachusetts state law. Accordingly, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## I.    Facts Alleged in the Complaint

Plaintiff James McGinn was appointed to the position of Colonel of the Massachusetts Environmental Police ("Environmental Police") by Governor Charles Baker and began serving in that role in January of 2015. Compl. ¶¶ 8, 9 [#1]. The Environmental Police is an agency under the auspices of the Executive Office of Energy and Environmental Affairs ("Executive Office"). Id. ¶¶ 2, 4. Prior to his appointment to run the Environmental Police, McGinn was a member of the Massachusetts State Police and was not acquainted with the Command staff or the management level members of the Environmental Police. Id. ¶ 8. While McGinn served as Colonel of the Environmental Police, Defendant Matthew A. Beaton served as Secretary of the Executive Office of Energy and Environmental Affairs. Id. ¶ 3. In this role, Beaton was McGinn's direct supervisor. Id.

During the course of McGinn's service, McGinn states that he objected to and refused to participate in several instances of illegal and/or unethical conduct by members of the Environmental Police and Beaton. Id. ¶ 11. McGinn's allegations include the following:

- That McGinn objected to and refused Beaton's request that McGinn use a law enforcement database to "look into" an individual who had moved into Beaton's neighborhood. Id. ¶¶ 12–13.

- That McGinn objected to and refused to take part in an endemic practice in the Environmental Police wherein officers would be paid for work that they did not actually perform. Id. ¶¶ 15–20, 59–65.

- That McGinn refused Beaton's request to "fix" a March 2016 ticket that Beaton was issued by the Framingham Police Department, id. ¶ 30, and also refused an October 27, 2017 request by the Executive Office's Director of Facilities and Infrastructure to "fix" a different ticket. Id. ¶ 38.

- That McGinn objected to the Environmental Police's practice that required officers of the Environmental Police to teach classes at a private, for-profit, day camp without reimbursement to the Commonwealth. Id. ¶ 40. McGinn alleges that the officers who were required to teach at this camp were funded with federal grant money and that when he complained and took steps to stop the practice, Secretary Beaton interceded and ordered McGinn to continue to have officers teach at the camp. Id. ¶¶ 41, 48.

- That McGinn raised concerns about the lack of policies and procedures for officers who were out on "injured-on-duty" leave. Id. ¶¶ 49–55. This included specific concerns about possible fraud in the Environmental Police in the case of one officer who had been on injured on duty leave for years without any follow up from the Environmental Police or an independent medical examination. Id. ¶¶ 50–51.

- That prior to the 2018 gubernatorial election—during which officer abuse of overtime was a central issue—McGinn was directed by Secretary Beaton to keep a "lid on" his concerns with regard to the operations of the Environmental Police since revelation of any major problems would look bad for the Governor. Id. ¶¶ 57, 66, 67.

McGinn alleges that the culmination of these activities was that he became the subject of a politically motivated and retaliatory investigation. Id. ¶¶ 72–74, 87. This "investigation" concerned two citations that McGinn was alleged to have wrongfully interfered with in 2015. Id. ¶ 74. The citations were issued to children riding dirt bikes in his ex-wife's neighborhood (where

3

McGinn had not lived since 2011). Id. ¶ 75. The citations were voided not by McGinn, but by a Major in the Environmental Police, and it was common practice within the Environmental Police to void citations for minor juvenile violations. Id. ¶ 76. Furthermore, the Major that voided the citations has stated that McGinn in no way interceded in the process. Id. ¶ 78. McGinn alleges that this investigation into the three-year-old tickets was instigated by the same members of the Environmental Police who were the subject of McGinn's investigations of waste and fraud, and that the investigation was designed to thwart McGinn from his efforts to achieve reform and accountability. Id. ¶ 80.

While the investigation into McGinn was ongoing, Beaton encouraged McGinn to "quietly resign." Id. ¶ 88. Beaton also conveyed that if McGinn refused to resign, "they'll go to the press and things will get ugly." Id. McGinn refused to resign and conveyed to Beaton that he had done nothing improper. Id. In response, Beaton threatened McGinn with criminal prosecution for voiding the 2015 civil citations unless McGinn resigned. Id. ¶¶ 89, 90. When McGinn refused, the Defendants referred their investigation of the 2015 citations to the Attorney General for further inquiry and leaked the investigation into McGinn to the media. Id. When McGinn continued to refuse to resign, the Executive Office terminated McGinn, effective October 19, 2018. Id. ¶ 96. Prior to being terminated, McGinn was never provided with any formal notice of the specifics concerning the allegations against him, nor was McGinn provided a hearing. Id. ¶ 79.

After McGinn's termination, McGinn sent Defendants notice that he would be bringing a claim against all Defendants under the Massachusetts Whistleblower Act. Id. ¶ 97. Defendants never responded to Plaintiff's notice but did threaten McGinn with referral of the ticket fixing investigation to the State Ethics Commission and in fact referred him for investigation in January

2019. Id. ¶¶ 98, 99. Then, in late April 2019, Plaintiff sent a second notice that he would be filing a Whistleblower Act claim. Id. ¶ 101. Approximately two weeks after this second letter, the State Ethics Commission notified Plaintiff that they had voted to investigate the 2015 ticket fixing allegations. Id. ¶ 104. On July 16, 2019, McGinn brought this action.

## II. Legal Standard

To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

## III. Discussion

Plaintiff's complaint brings four claims against the Defendants. Count I alleges that Secretary Beaton,[1] acting in both his official and individual capacity,[2] violated rights guaranteed to McGinn under the federal Constitution in violation of 42 U.S.C. § 1983; Count II alleges that

---

[1] Plaintiff's Complaint ¶ 106 [#1] stated that Count I was being brought against all Defendants. However, as Plaintiff conceded at hearing, states and state agencies are not subject to suit under § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Plaintiff clarified that Count I was only proceeding against Secretary Beaton, in his individual and official capacity.

[2] At hearing, Plaintiff also clarified that he is seeking only injunctive relief against Secretary Beaton in his official capacity and monetary relief against Secretary Beaton in his individual capacity. Accord Hafer v. Melo, 502 U.S. 21, 31 (1991) (noting that under § 1983, Plaintiffs can obtain injunctive relief from state officials sued in their official capacity and monetary relief from state officials in their personal capacity).

the Executive Office and the Environmental Police retaliated against McGinn by firing him for protected whistleblower activity in violation of Mass. Gen. Laws ch. 149, § 185; Count III alleges that all Defendants acted in violation of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H, I, by interfering with McGinn's rights through threats, intimidation, or coercion; and, Count IV alleges that all Defendants violated Massachusetts public policy by wrongfully terminating McGinn's employment. Compl. ¶¶ 106, 111, 115, 117–119 [#1]. Defendants seek dismissal of all counts. The court will address each in turn.

First, some housekeeping. Plaintiff has brought claims against both the Environmental Police and the Executive Office. While the Environmental Police is a distinct subdivision of the Executive Office, for the purposes of the claims set forth in McGinn's complaint, he treats the Environmental Police and Executive Office interchangeably. However, Massachusetts law provides that McGinn, as Colonel of the Environmental Police, was not hired, employed, supervised, or fired by the Environmental Police, but by the Executive Office. See Mass. Gen. Laws ch. 21A, § 10A ("The secretary [of the Executive Office] shall appoint the director [of the Environmental Police] and may remove him"). And nothing in McGinn's complaint identifies claims against the Environmental Police specifically, but instead alleges wrongdoing by his employer, the Executive Office, and its Secretary, Beaton. Accordingly, all claims against the Environmental Police are dismissed.[3]

---

[3] Along the same lines, Plaintiff has brought claims against both the Executive Office and against Beaton in his official capacity. In many instances the two are interchangeable since "[a] suit against a public official in his official capacity is a suit against the governmental entity itself." Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005). Indeed, the Executive Office and Beaton, in his official capacity, are represented by same counsel and have filed a single, combined brief in support of their motion to dismiss. Accordingly, except where the two need to be separately identified, the court uses the term Executive Office to refer to both.

a. *Count I – 42 U.S.C. § 1983*

The complaint alleges that Secretary Beaton, acting in both his official and individual capacity, acted under the color of law to deprive McGinn of his First Amendment right to free speech. Compl. ¶ 106 [#1].[4] Specifically, McGinn complains that Beaton restricted his free speech insofar as Beaton terminated Plaintiff for "comments he made relative to what he perceived to be unlawful misconduct on the part of the [Executive Office] Human Resource Department, supervisory officers of the Department, and other members of the Department generally." Pl.'s Opp'n 15 [#30-1].

For Plaintiff, as a public employee, to prevail on his § 1983 claim alleging a violation of his right to free speech under the First Amendment, he must establish: (1) that he spoke as a citizen on a matter of public concern; (2) that his interest in commenting upon these matters outweighed defendant's interest in the efficient performance of its public services; and (3) that the "protected speech" was a substantial or motivating factor in the defendant's adverse

---

[4] The complaint also alleges that Secretary Beaton violated Plaintiff's "right to continued employment, right to participate in concerted activity, right to Due Process, and the right to petition and seek redress from Governmental abuse." Compl. ¶ 106 [#1]. However, Plaintiff does little more than recite these claims without providing the substantive bases for the requested relief. This does not satisfy Plaintiff's pleading obligations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .") (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Defendants complain in their motions to dismiss about the insufficiency of the allegations as to the non-free speech elements of Plaintiff's § 1983 claim. See Executive Office's Mem. 2 n.2 [#19]; Beaton's Mem. 4 [#21]. Plaintiff's oppositions to Defendants' motions did not address these arguments. At oral argument, Plaintiff briefly noted that he was asserting that he was deprived of due process under the federal Constitution because he held a property interest in his continued employment by Massachusetts, but offered no argument as to what process he contends was due. Accordingly, the court focuses its analysis on the issue argued: whether Plaintiff has sufficiently pleaded that his first amendment right to free speech guaranteed by the federal Constitution has been violated, giving rise to a claim for relief under § 1983.

employment action. Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011). The case here turns on the first element: whether the speech for which McGinn alleges he was fired constituted acts of McGinn speaking "as a citizen" or whether, by making the statements that allegedly resulted in his termination, he was simply doing his job as a Colonel of the Environmental Police.[5] This is a question of law that is for the court to decide. Bergeron v. Cabral, 535 F. Supp. 2d 204, 211 (D. Mass. 2008), remanded in non-pertinent part, 560 F.3d 1 (1st Cir. 2009) (citing Connick v. Myers, 461 U.S. 138, 148 n.7 (1983)).

When evaluating whether an employee's speech is subject to First Amendment protection, the ultimate inquiry is whether the speech, when made, was made as a citizen or as an employee. Garcetti v. Ceballos, 547 U.S. 410 (2006) (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes"). Put a different way, "the focus in this context is not on the content of the speech, but 'the role the speaker occupied when he said it.'" Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 146 (D. Mass. 2009) (citing Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 692 (5th Cir. 2007)); see also Lane v. Franks, 573 U.S. 228, 240 (2014) (rejecting content-based

---

[5] Defendants also contend that McGinn's speech did not relate to a matter of public concern. See, e.g., Executive Office's Mem. 10–11 [#19]. However, this is not a persuasive argument. McGinn alleges he was fired because of complaints he made concerning waste, fraud, and other acts of wrongdoing by members of the Executive Office and Environmental Police. In Curran v. Cousins, the First Circuit held that certain subjects of public employee speech may inherently be "of public concern." 509 F.3d 36, 46 (1st Cir. 2007). These subjects "include official malfeasance, abuse of office, and neglect of duties." Id. at 46. Plaintiff, in alleging both neglect of duties by certain Environmental Police officers, as well as abuse of office by former Secretary Beaton, has alleged sufficient facts to overcome a motion to dismiss on this question. See also Connick, 461 U.S. at 146 (holding that to constitute speech on a matter of public concern, an employee's expression must "be fairly considered as relating to any matter of political, social, or other concern to the community").

test in favor of context-based analysis, that is "whether the speech at issue is itself ordinarily within the scope of an employee's duties").

Here, there is no indication from the complaint that the speech at issue fell outside McGinn's employment duties. For this reason, his speech is not subject to First-Amendment protections under the Supreme Court's holdings in Garcetti and Lane. 547 U.S. 410; 573 U.S. 228. According to Plaintiff, "[a]s the Departmental head of the Environmental Police, [he] had the managerial authority, indeed the responsibility, to investigate these employment issues and to take the appropriate steps to ensure that public funds were being properly spent for work actually performed." Compl. ¶ 71 [#1]. Conceivably, Plaintiff's speech—though addressed squarely to topics within his duties as head of the Environmental Police—may have still constituted protected speech if he raised his concerns outside of the department through a public statement, a letter to a newspaper or legislators, or other manners that indicated that he was acting *as a citizen* and not as an employee when he made the statements. See Spiegla v. Hull, 481 F.3d 961, 967 (7th Cir. 2007) (citing Garcetti, 547 U.S. at 421). But here, the pleadings convey that Plaintiff only raised his concerns through internal channels, undermining his claim that he was doing something other than his job by raising the concerns. See Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008) ("Cases from other circuits are consistent in holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job").

McGinn's arguments for why his actions as Colonel are subject to First Amendment protection are not persuasive under the Supreme Court's precedent as to what constitutes protected speech for public employees. Plaintiff argues that the "nature of [McGinn's concerns] was . . . typical of the concerns that any reasonable citizen would also have in the

circumstances." Pl.'s Opp'n 12 [#28-1]. Likewise, he argues that his same concerns could "reasonably be raised by anyone" and that when McGinn went to the legal department to complain he was "speaking as a citizen . . . as if it was not within the chain of command" since the legal department "serves a dual function as supervising authority . . . [and] as a public body whom anyone can report related issues to." Id. at 13. But the relevant analysis is not centered on whether McGinn engaged in speech that could, under other circumstances, be protected speech if it were to have been engaged in by an ordinary citizen. Instead, the analysis is squarely whether *McGinn* was making the relevant statements wearing his public employee hat or wearing his citizen hat. See Decotiis, 635 F.3d at 31 (1st Cir. 2011) (noting that this is "[t]he question presented by such a case").[6] For the reasons set forth above, the facts alleged in the complaint all point to McGinn acting as an employee.

Plaintiff also argues that the alleged facts here parallel those that the Second Circuit found to be protected speech in Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011). Pl.'s Opp'n 17–18 [#30-1]. In Jackler, the Second Circuit concluded that a probationary police officer engaged in protected speech when he refused to retract a truthful report and make false statements in connection with an investigation into a charge of police brutality. 658 F.3d at 231–32. The Second Circuit reasoned that when Plaintiff refused to retract the truthful report and submit an

---

[6] Plaintiff's contention that the legal department also serves as a public body whom anyone can report these types of issues to could, under different facts, support Plaintiff's position insofar as it points to a so-called "citizen analogue" to the speech at issue. See Decotiis, 635 F.3d at 32 (1st Cir. 2011) (noting that "whether there is a so-called citizen analogue to the speech" is one of the factors to be considered when determining whether the speech at issue was protected speech). But, as the Supreme Court noted in Garcetti, "[w]hen a public employee speaks pursuant to employment responsibilities . . . there is no relevant analogue to speech by citizens who are not government employees." 547 U.S. at 424. Here, there is also no relevant citizen analogue since no citizen could have acted in a similar manner to McGinn since McGinn possessed the role of Colonel of the Environmental Police and was acting pursuant to that role.

untruthful report he was not "simply doing his job" but was instead exercising his First Amendment rights as a citizen "to refuse to retract a report to the police that he believes is true, to refuse to make a statement that he believes is false, and to refuse to engage in unlawful conduct by filing a false report with the police." Id. at 241–42. The reasoning in Jackler could arguably extend First Amendment protections to McGinn for his refusal to fix tickets or improperly use law enforcement databases at the request of members of the Executive Office. However, even if the court were to conclude that McGinn's refusals to engage in that activity was protected, Plaintiff has not sufficiently pleaded that doing so was a substantial or motivating factor in McGinn's termination, a required element of his § 1983 claim, see Decotiis, 635 F.3d at 29, for at least three reasons.

First, McGinn alleges that he refused Beaton's requests in April 2015 and March 2016,[7] years before McGinn was terminated. See Compl. ¶¶ 12, 30, 96 [#1]. This period between alleged cause and effect undermines any inference of a causal relationship between the two. Second, McGinn has pointed to intervening factors as the alleged cause of his firing, namely that Beaton and the Executive Office sought to suppress McGinn's efforts to reveal overtime abuses in the Environmental Police in the midst of the 2018 Gubernatorial election. Id. ¶ 87. Third, McGinn alleges that even before he was hired to lead the Environmental Police, Beaton knew that McGinn would refuse to "fix" tickets at the request of government employees. Id. ¶ 36. Under these circumstances, even taking the factual allegations as true, it is not plausible that

---

[7] McGinn also alleges that he refused to fix a ticket for the Executive Office's Director of Facilities and Infrastructure on October 27, 2017. Compl. ¶ 38 [#1]. However, there are no allegations in the complaint that the Director of Facilities and Infrastructure was involved in McGinn's termination.

McGinn's refusals in 2015 and 2016 were a substantial or motivating factor behind his October 2018 termination.

For the reasons stated above, the court concludes that McGinn's allegation that he was terminated because he raised concerns about the operations inside the Environmental Police do not create a cause of action under § 1983 since McGinn has not plausibly claimed a violation of his rights under the First Amendment to the federal Constitution. Accordingly, the court does not need to grapple with Beaton's argument that he is protected under the doctrine of qualified immunity since that defense is only applicable to the § 1983 claim.

> b. *Jurisdiction Over Remaining Claims*

Defendants argue that if Count I, Plaintiff's § 1983 claim, is dismissed, the court should also dismiss the remaining claims due to lack of subject-matter jurisdiction. Beaton's Mem. 12 [#21]. However, the court's subject-matter jurisdiction does not automatically give way once the federal claim is dismissed. Instead, the jurisdictional statute provides that once the federal claims giving rise to original jurisdiction are dismissed, the court "*may* decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. § 1367(c)(3) (emphasis added). The calculus for whether a federal court should continue to exercise jurisdiction over state law claims is not a rigid or formulaic one, but instead is a "'pragmatic and case-specific evaluation of a variety of considerations,' including 'the interests of fairness, judicial economy, convenience, and comity.'" Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015) (citing Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)). Here, where the parties have briefed and argued at hearing Defendants' motions to dismiss the remaining state law claims, concerns about comity do not outweigh the pragmatic benefits of adjudicating, in full, the motions that are presently

before this court. Accordingly, the court will proceed to consider the parties' arguments on the remaining state law claims.

       *c.   Count II – Massachusetts Whistleblower Act, Mass. Gen. Laws ch. 149, § 185*

Count Two claims that the Executive Office (but not Beaton in his Official Capacity) violated Mass. Gen. Laws ch. 149, § 185 (the "Massachusetts Whistleblower Act") by terminating him in retaliation for disclosing, objecting to, and/or refusing to participate in policies or practices that Plaintiff reasonably believed were in violation of a law, rule, or regulation promulgated by law. Id. (citing Mass. Gen. Laws ch. 149, § 185). The Executive Office argues that Plaintiff's Whistleblower Act complaint must be dismissed on the pleadings for two reasons. As discussed below, neither are meritorious.

First, the Executive Office claims that "[w]ith respect to most of his allegations, McGinn has failed to allege that he reasonably believed that the practices and policies that he disclosed or objected to were in violation of a law, rule or regulation." Executive Office's Mem. 12 [#19]. Namely, Defendant contends that Plaintiff's allegations "largely concern disagreements over Management Practices, not illegal activities." Id. at 12. This argument overlooks or whitewashes the allegations stated in the complaint. In his complaint, McGinn states, inter alia, that he brought to the attention of the Executive Office numerous ways in which officers in the Environmental Police, through deceit or misrepresentation, were being paid for work that they did not perform. See Compl. ¶¶ 15–23, 49–55, 58–65 [#1]. Practices not dissimilar to those alleged here have been subject to both federal and state investigation and prosecution. Indeed, Plaintiff's complaint alleges similarity between the practices he reported at the Environmental Police and practices by members of the Massachusetts State Police that have been criminally investigated and prosecuted. Id. ¶¶ 72–73. Where the question on Defendant's motion to dismiss

is simply whether Plaintiff has plausibly alleged that he reasonably believed he was reporting practices that were in violation of a law, rule, or regulation promulgated by law, the court finds that Plaintiff has cleared that bar here.

Second, the Executive Office alleges that McGinn is barred from bringing his Whistleblower Act claim since he did not provide the Executive Office "written notice" of his concerns and afford the Executive Office a "reasonable opportunity to correct the activity, policy or practice." Executive Office's Mem. 15 [#19]. However, the Whistleblower Act only requires the plaintiff-employee to provide written notice where the relevant disclosure is made to a "public body" as opposed to "a supervisor." See Mass. Gen. Laws ch. 149, § 185 (c)(1).[8]

McGinn's complaint sufficiently pleads that he informed his supervisor, Beaton, of his concerns

---

[8] Subsection (b)(1) of ch. 149, § 185 (emphasis added) provides:

> (b) An employer shall not take any retaliatory action against an employee because the employee does any of the following:
> (1) Discloses, or threatens to disclose *to a supervisor or to a public body* an activity, policy or practice of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment . . . .

Meanwhile, subsection (c)(1) (emphasis added), which provides the written notice requirement, states:

> (c)(1) Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b) (1) shall not apply to an employee *who makes a disclosure to a public body* unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

about the practice and procedures within the Executive Office and the Environmental Police. See Compl. ¶¶ 15, 17, 40, 48, 55, 58 [#1].

Accordingly, McGinn's Whistleblower Act claim against the Executive Office is not subject to dismissal.

### d. Count III – Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, I

Both the Executive Office and Beaton move to dismiss Plaintiff's claim under the Massachusetts Civil Rights Act ("MCRA"). The Executive Office argues that McGinn has waived his right to bring the MCRA claim. Meanwhile, Defendant Beaton argues that Plaintiff has failed to satisfy the pleading requirements under Fed. R. Civ. P. 8(a)(2). The court addresses the two arguments in turn.

First, the Executive Office argues that McGinn waived his right to sue under the MCRA by bringing a parallel claim under the Massachusetts Whistleblower Act. The plain text of the Whistleblower Act is in accordance with the Executive Office's position; the act provides:

> the institution of a private action in accordance with subsection (d)[9] shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law.

Mass. Gen. Laws ch. 149, § 185(f). Accord Bolduc, 629 F. Supp. 2d at 156 (collecting cases for the proposition that the filing of a lawsuit under the whistleblower act waived other claims). The only limitation on the waiver provision is that it extends only "to related claims seeking damages essentially for the same conduct . . . that constituted the core retaliation for the whistleblowing." Oberg v. City of Taunton, 972 F. Supp. 2d 174, 191 (D. Mass. 2013) (citing Bennett v. City of

---

[9] Subsection (d) provides, in relevant part: "Any employee or former employee aggrieved of a violation of this section may, within two years, institute a civil action in the superior court. Any party to said action shall be entitled to claim a jury trial. All remedies available in common law tort actions shall be available to prevailing plaintiffs."

15

Holyoke, 230 F.Supp.2d 207, 220 (D. Mass. 2002)). Here, Plaintiff does not argue that the MCRA claim is rooted in a separate set of factual allegations than the Whistleblower Act claim. Indeed, at hearing, counsel recognized the "overlap" between the allegations supporting each claim. Instead, Plaintiff argues that enforcing the waiver provision at this stage is "premature" since Plaintiff should be allowed to plead the claims in the alternative and that a "forced election" between the two claims would be "unjust and unfair." Pl.'s Opp'n 28 [#30-1]. But Plaintiff's argument is not persuasive where the plain text of the Whistleblower Act provides that Plaintiffs must make the election early in the proceeding and that by *instituting* the Whistleblower Act claim, plaintiff has waived other rights and remedies. See Reilly v. Robbins, No. 05-cv-11806-RWZ, 2006 WL 1892245, at *1 (D. Mass. July 10, 2006) (concluding that waiting "until a whistleblower claim has been fully adjudicated before determining whether or not the waiver provision applies . . . is inconsistent with the language of the statute, which states that 'the *institution* of a private [whistleblower] action' triggers the waiver") (citing Mass. Gen. Laws ch. 149, § 185(f)") (emphasis in original).[10] Accordingly, the remaining state law claims against the Executive Office[11] are subject to dismissal.

---

[10] Plaintiff's complaint that dismissal of other state law claims in light of the Whistleblower Act claim would be "unjust and unfair" would have substantial resonance in a case where the court found that the Whistleblower Act claim was subject to dismissal on a motion under Fed. R. Civ. P. 12(b)(6). In such an instance, there may be a substantive question as to whether a Whistleblower Act claim subject to dismissal on the pleadings had been "initiated" for the purpose of the waiver provision. However, that question is not before the court here since the court concludes that Plaintiff's Whistleblower Act claim survives a Rule 12(b)(6) challenge.

[11] Because, as noted above, Plaintiff only initiated the Whistleblower Act claim against the Executive Office, the state law claims against Beaton, in both his individual and official capacity are not waived. However, with regard to Plaintiff's state law claims against Beaton, in his official capacity, Defendant argues that Beaton is not a proper defendant in either of the remaining state law claims. Namely, Defendant argues that the MCRA does not create liability for officials acting in their official capacity and that, under Massachusetts law, officials acting in their official capacity are immune from liability for intentional torts, such as wrongful termination. Executive Office's Mem. 17–19 [#19]. Plaintiff expressly does not contest these

The second argument, presented by Beaton, is that McGinn has insufficiently pleaded his MCRA Claim. To prevail on a claim under the MCRA, "a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." Currier v. Nat'l Bd. of Med. Examiners, 462 Mass. 1, 12 (2012). Beaton argues that the complaint must be dismissed because "there are no well-pled facts in the Complaint as to how Secretary Beaton threatened, intimidated, or coerced McGinn." Beaton's Mem. 11 [#21]. That is not accurate. At the least, the complaint alleges the following: That Beaton threatened McGinn with bringing allegations against McGinn "to the press" unless McGinn resigned, compl. ¶ 88 [#1]; That Beaton wanted McGinn out of office out of concern that McGinn's allegations about fraud and waste in the Environmental Police would reflect poorly on the Governor, id. ¶ 87; That when McGinn refused to resign, the Executive Office and Beaton threatened him with criminal prosecution and then leaked information to the media in an effort to coerce McGinn into resigning, id. ¶¶ 89, 90; And that, following his termination, the Executive Office and Beaton threatened McGinn with referral to the State Ethics Commission in an effort to silence McGinn's whistleblower complaints, id. ¶ 99. Whether any of these accusations ultimately turn out to be true is a question for another day. For now, the only question is whether Plaintiff has satisfied his pleading requirement to "state a claim to relief that is plausible on its face" and to do so in a manner that "gives the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly,

---

arguments but instead notes that the remaining state law claims are also brought against Beaton in his individual capacity. Pl.'s Opp'n 27–28 [#29]. Accordingly, the court will proceed to only evaluate the remaining state law claims against Beaton in his individual capacity.

17

550 U.S. at 555). Because Plaintiff has done so here, the claim is not subject to dismissal under Fed. R. Civ. P. 12(b)(6).

> *e. Count IV – Wrongful Termination in Violation of Massachusetts Public Policy*

For the reasons set forth in the previous section, Plaintiff has waived his wrongful termination claim against the Executive Office by bringing the Whistleblower Act claim. However, Plaintiff has also alleged his wrongful termination claim against Beaton. See Compl. ¶¶ 116–20 [#1]. Beaton has not moved for dismissal of the wrongful termination claim other than to say that the claim should be dismissed and adjudicated in state court. Accordingly, the wrongful termination claim against Beaton may proceed.

## IV. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss the Complaint [#18], [#20], are GRANTED IN PART and DENIED IN PART, as follows:

1. All counts against the Environmental Police are dismissed with prejudice.

2. Count I, alleging violation of 42 U.S.C. § 1983, is dismissed with prejudice as to all Defendants;

3. Count III, alleging violation of Mass. Gen. Laws ch. 12, §§ 11H, I, is dismissed, without prejudice, as to the Executive Office and Beaton, acting in his official capacity.

4. Count IV, alleging violation of Massachusetts' prohibition on terminations against public policy, is dismissed, without prejudice, as to the Executive Office and Beaton, acting in his official capacity.

The clerk shall set a status conference for the week of October 5, 2020. The parties should be prepared to discuss whether the court should retain jurisdiction over this action in light of dismissal of the federal claim.

    IT IS SO ORDERED.

Date: September 30, 2020                                        /s/ Indira Talwani
                                                                                                  United States District Judge